## Aetna Insurance Company v. Steele, et al.

(Decided November 25, 1927.)

## Appeal from Whitley Circuit Court.

1.  Insurance.—A provision in fire insurance policy, voiding policy on change in interest, title or possession of subject of insurance, is reasonable and valid.
2.  Insurance.—An insurance policy may be reformed the same as other written instruments, if by reason of mutual mistake or mistake on one side and fraud on the other it does not conform to real agreement.
3.  Reformation of Instruments.—Evidence to warrant reformation of executed contract on ground of fraud or mistake must be clear and convincing, or such as to establish fraud or mistake beyond reasonable controversy.
4.  Reformation of Instruments.—Evidence as to fraud of insurance agent or of mutual mistake of mortgagee and agent as to loss payable clause held insufficient to warrant reformation of fire insurance policy.

GORDON & LAURENT, T. M. GALPHIN, JR., and STEPHENS & STEELY for appellant.

T. F. YOUNG for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

Clarence Steele was the owner of a house and lot near Corbin. In May, 1923, he procured from J. H. Mitchell a loan of $1,000, which he secured by a mortgage on the property. At the same time the Aetna Insurance Company issued to Steele a policy insuring his dwelling in the sum of $1,000 and his household goods, etc., in the

sum of $200. Attached to the policy was the following loss payable clause:

"Any loss under this policy that may be proved due the assured shall be payable to the assured and J. H. Mitchell subject, nevertheless, to all the terms and conditions of the policy."

Among other provisions of the policy is the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if any change, other than by the death of the insured, takes place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise."

On April 21, 1924, Clarence Steele, the owner of the property, sold and conveyed it to James Walker and Polly Walker, his wife, in fee simple, with covenant of general warranty. After the sale and during the life of the policy, the dwelling was destroyed by fire.

In May, 1926, this action was brought by Steele and Mitchell to recover $1,000 on the building and $50 on the household goods. The company defended on the ground that no household goods were destroyed by fire, and that there had been a change in the interest, title, and possession of the subject of the insurance that rendered the policy void. Thereupon plaintiffs filed two amended petitions in which they sought a reformation of the contract. They alleged, in substance, that it was the intention of appellant's agent and plaintiffs that the contract should insure and protect the interest of Mitchell without being contingent on the liability of the company to Steele, and that, by reason of the mutual mistake of the parties, or by fraud on the part of appellant, the contract sued on was not the contract intended to be written. Evidence was taken, and on final hearing a reformation was decreed and judgment was rendered in favor of plaintiffs for the sum of $1,000, with interest and costs. The insurance company appeals.

A provision like the one in question, voiding the policy when a change in the interest, title, or possession of the subject of insurance takes place, is reasonable and

valid (McKinney v. Western Assurance Co. of Toronto, 97 Ky. 474, 30 S. W. 1004, 17 Ky. Law Rep. 325), and, it being admitted that Steele, the owner, sold and conveyed the property to James Walker and wife prior to the fire, it follows that the policy was not in force when the fire occurred, and that no recovery can be had unless the policy was properly reformed. The only witnesses testifying on the question of reformation were J. H. Mitchell, the mortgagee, and John W. Jones, appellant's local agent at Corbin.

Mitchell's evidence is as follows: He loaned Steele $1,000 during May, 1923. He took as security a mortgage on the property and an insurance policy with a loss payable clause attached. The policy was issued by John W. Jones. He thought that he and Steele made the arrangements to get the insurance policy. The policy was delivered to him. He thought that the agent knew that he had a mortgage on the property for $1,000. He issued his check to Jones for the premium, and Mr. Steele had never repaid any of that amount to him. On being asked, ''Did you understand and believe, when this policy was delivered to you, that it would protect your interest in the property,'' he answered, ''Yes, sir; I never made a loan on property unless.'' He never learned that his interests were not protected until after the fire. The mortgage was for $1,000, but whether any interest had accrued up to the fire he did not know. On cross-examination, he stated that both he and Mr. Steele took up the matter with Mr. Jones. He took the premium out of the check that he gave to Steele. In a letter which he wrote to the insurance company, he stated that the policy had a loss clause payable to himself.

John W. Jones testified as follows: He issued the policy as agent for the company. Mitchell asked him to write the policy for $1,000 and bring it to his office and he would pay for it. Mitchell told him to write it with a loss payable clause. He did not know that Mitchell had a mortgage on the property, but understood that he had an interest in the property that he desired to protect. He never explained to him the difference between a loss payable clause and the standard mortgage clause. He had a standard mortgage clause in his office. While he did not know that Mitchell had a mortgage on the property, he supposed he had by his asking that the loss payable clause be attached. On cross-examination, he stated that under

the standard mortgage clause the insurance company was subrogated to the rights of the mortgagee. The copy of the standard mortgage clause, which he filed, provides, in substance, that, as to the interest of the payee as mortgagee, only the policy shall not be invalidated by any change in the interest, title, or possession of the property. Mitchell, being recalled, testified that he did not know the property had been sold before the fire.

It is the rule in this state that an insurance policy may be reformed the same as other written instruments, if, by reason of mutual mistake, or mistake on one side and fraud on the other, it does not conform to the real agreement. Cecil v. Kentucky Livestock Insurance Co., 165 Ky. 211, 176 S. W. 986; Georgia Casualty Co. v. Bond-Foley Lumber Co., 187 Ky. 511, 219 S. W. 442. It must not be overlooked, however, that, to reform an executed contract on the ground of fraud or mistake the evidence must be clear and convincing or such as to establish the fraud or mistake beyond reasonable controversy. Johnson v. Elkhorn Gas Coal Mining Co., 193 Ky. 585, 236 S. W. 1041. It is at once apparent that the evidence of fraud or mistake does not come up to the required standard. Neither Mitchell nor Jones testified that it was agreed between them that the contract should insure and protect the interest of Mitchell without being contingent on the liability of the company to Steele. There was no evidence of any agreement that any change in the title, interest or possession of the property should not affect the company's liability to Steele. There was no evidence that it was agreed that the standard mortgage clause should be attached to the policy and that by mutual mistake the loss payable clause was attached. Even Mitchell's evidence goes no further than to say that he understood and believed that when the policy was delivered to him it would protect his interest in the property. As a matter of fact, his interest was protected in the usual way, and, even if he had gone further and stated that it was his understanding and belief that his interest would be protected without regard to any act on the part of Mitchell, the mere understanding and belief of one of the parties to a contract is not sufficient to show that by reason of fraud or mistake the contract as executed did not conform to the real agreement between the parties. Considered as a whole, the evidence shows that the agent issued, and

Mitchell accepted, a policy with the usual loss payable clause, without any agreement whatever that a different policy should be issued. We are therefore constrained to the view that the chancellor erred in reforming the policy.

There being no liability without a reformation, it follows that the judgment should have been rendered in favor of appellant.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.