## Sutherland Bros. v. Travelers' Ins. Co.

(Decided Nov. 11, 1932.)

W. A. DAUGHERTY for appellant.
CHILDERS & BOWLES for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal seeking the reversal of the judgment of the Pike circuit court in favor of the Travelers' Insurance Company against Sutherland Bros., a partnership, for $505.75.

In July, 1930, the appellee, Travelers' Insurance Company, filed its petition in the Pike circuit court, seeking to recover the sum of $699.96 alleged due and owing it by defendant (appellant here) as unpaid balance due it upon two policies of insurance issued defendant partnership on April 13, 1927.

The petition alleges that at such time the plaintiff, at the request of and upon the application of appellant, sold and delivered it two policies, one a public liability policy and the other a compensation policy, by the terms of which annual premiums were payable in the sum of $1,818.19, and upon which amount the defendant had paid only the sum of $1,118.23, leaving a balance owing of $699.96, the amount sued for.

Defendant filed its answer and counterclaim, by which it denied the allegations of the petition and also pleaded certain affirmative defenses, in substance denying that it had ever applied for the public liability insurance issued it, and further affirming that it had paid, and more than paid, the policy premiums sued for, and further that the compensation policy was not issued it by the plaintiff according to its application and contract had therefor with the plaintiff on March 10, 1927, rather than on the later date of April 13, 1927, the effective date of the policies as issued it by the plaintiff; and that by reason of said mistaken dating of the policy, the plaintiff was avoiding injury claims arising and of necessity paid by defendant during the interim between March 10 and April 13, 1927, which, according to the alleged agreement of parties, should have been covered and protected by the insurance policies covering the defendant's construction work during such period.

By amended answer, defendant further sought a reformation of the insurance policies, upon the grounds that by its contract therefor, they should have been issued as effective from March 10, but through mutual mistake they were issued upon the later date of April 13, 1927, and moved the transfer of the case to equity that such reformation might be had.

The affirmative matter of the answer and counterclaim by agreement of parties was controverted of record.

Issue being thus joined, the cause by agreement of parties was submitted to the court upon the law and the facts for judgment.

Proof being heard, the court adjudged that plaintiff recover judgment against the defendant in the sum of $505.75 and costs.

Defendant being denied a new trial upon its motion and grounds therefor, it prosecutes this appeal, seeking a reversal of the judgment upon the grounds that the same "was flagrantly against the evidence and contrary to the law and evidence."

Appellant by its brief insists in support of its assigned grounds of error: (1) That the appellant did not contract for the public liability policy, (2) that the compensation policy should have been reformed, and (3) that the judgment should have been for defendant on its counterclaim for $282.47 instead of for plaintiff for $505.75.

Briefly reviewing the evidence looking to a better understanding of our discussion and disposition of the alleged errors complained of, from the record it reasonably appears that the appellant, Sutherland Bros., was a partnership composed of two brothers, Dr. J. C. Sutherland and S. H. Sutherland, who resided in Clintwood, Va.; that for several years next before applying for the insurance in question, it was engaged as a contractor in highway construction and that shortly before its application on March 10, 1927, for the employer's insurance here involved, it secured a contract for a certain section of the Mayo Trail highway in Pike and Leslie counties, Ky.; and that, upon its decision made to do this construction work under the provisions of the Kentucky Workmen's Compensation Law (Ky. Stats., sec. 4880 et seq.), it applied to resident agent, at Pikeville, of the plaintiff insurance company for insurance, covering and protecting it while doing this contracted highway construction.

Looking to this end, negotiations for such insurance were had between Dr. J. C. Sutherland, a partner in the appellant company, and A. R. Venters, insurance agent at Pikeville, on March 10, 1927, whereby such em-

ployer's liability insurance was applied for by Sutherland Bros. and application accepted, which was to be issued, according to the agent's statement, upon the defendant partnership receiving notice to begin the highway construction work and his notifying the agent of his receiving such notice.

Appellant's testimony, however, is to the effect that he told the agent that he was starting almost immediately upon this construction work and that he wished the insurance to be issued at once, so as to cover defendant's employer's liability through the whole period of its construction work, and that such agreement was made. However, it is admitted that nothing further was done or notice given by either of the parties until April 13, 1927, when plaintiff company, becoming advised that defendant had begun construction upon its highway contract, had Mr. Rose, one of its representatives, visit the defendant at its construction camp at Virgie, Ky., who advised its manager there in charge that it would at once issue it the insurance, and one or two days thereafter, the two policies were issued from plaintiff's Louisville office to its resident agent, A. R. Venters, at Pikeville, who in turn wrote appellant at Clintwood, Va., inclosing invoice for initial premiums upon the two policies, issued and therein described as policies Nos. UB-4980702 and DE-4841165, the latter being one for public liability insurance and the other for compensation insurance, also inclosed two compensation forms, which it was requested to execute and acknowledge and to return the same, together with check covering the invoiced premiums of $310, which was done by Dr. J. C. Sutherland, who at the time wrote the agent as follows:

"I am returning blanks filled out as per your request which gets our policies in shape. I notice that the policies begin April 13th. I think they should have been from March 16th, as that is the time we were notified to proceed to work."

It is admitted that public liability insurance was not mentioned nor expressly referred to by either the plaintiff's agent or the defendant applicant upon the occasion of their insurance negotiation on March 10, nor was the same ever expressly discussed between them until after the policy therefor had been issued to the defendant along with the compensation policy.

Appellant testifies that when he became informed later in the summer that a policy for public liability insurance had been issued it, he wrote the agent, Mr. Venters, that he had not applied for and would not accept this public liability policy and canceled same. It appears, however, that while correspondence was had between the agent, Mr. Venters, and the company looking to this end, that the company declined to cancel the policy, saying that it was their custom to issue it along with compensation insurance and that the same as issued had been accepted and retained by the defendant partnership, and demanded that the premiums thereon be paid by the defendant.

It is further shown by the evidence that, the defendant falling behind with its payment of the installment premiums upon the liability insurance, the plaintiff wrote a letter to its agent, Mr. Venters, directing him to proceed with the collection of the $65 premium past due on the liability policy and stating that it would be canceled if not at once paid. This letter, describing the policy upon which the premium was owing, was forwarded by Venters to defendant with his request added thereon for payment of the past-due premium, which was at once paid by the defendant with a check therefor.

Defendant states that its payment of this premium was made by it without reading the letter describing the insurance upon which the premium was made, and thought it was paying a premium on its compensation policy.

The court below, after considering the evidence introduced, we are of the opinion, properly held that even while there had been no original contract shown made by defendant for public liability insurance, yet a policy for same having been by the plaintiff submitted the defendant for its approval and acceptance, along with the compensation policy, that defendant should be held to have accepted the policy through its long retention of the policy so sent it, and its payment of premiums demanded thereunder; that during such time defendant had enjoyed the protection provided by the terms of the liability policy and that it would be inequitable to allow it to repudiate its obligation therefor, while retaining the policy and the benefits thereunder given it; and that if such holding worked a hardship upon the defendant, it alone was to blame therefor, through its own

negligence in not advising itself of the character and nature of the insurance which it had accepted and retained and upon which it was paying premiums to the plaintiff thereon.

We will next consider appellant's contention that there should be a reformation of the compensation policy, by changing its effective date from that of April 13, 1927, as issued, to that of March 10, as alleged by appellant applied for and agreed upon. The lower court held the appellant not entitled to this relief, upon the grounds that the same was not sustained by the evidence.

We are fully persuaded of the correctness of the learned chancellor's decision in so holding. The evidence herein presented shows no mutual mistake to have been made by the parties in the issual of the compensation policy bearing date and made effective as of April 13, 1927. If any mistake at all was made in so doing, the evidence of the parties as to what was their agreement as to when this insurance was to have been issued was very conflicting. In such case the law as to reformation is that:

> "The burden being on the party alleging the mistake, to establish that fact, reformation will not be granted in the absence of strong and most satisfactory evidence of the mistake. A direct conflict of testimony is conclusive against the reformation of an instrument."

Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369, 370. In the course of the opinion rendered in this case, supra, the court further expounds the rule, as to the reformation of instruments, by quoting with approval its statement of the rule as given in the case of Griffith v. York, 152 Ky. 14, 153 S. W. 31, as follows:

> "It is well settled that, where a mistake has been made by the draftsman in the perparation of a deed, equity will afford relief by directing the reformation of the instrument, so as to carry out the intention of the parties. Nutall v. Nutall, 26 Ky. Law Rep. 671, 82 S. W. 377; Dean v. Hall, 31 Ky. Law Rep. 1306, 105 S. W. 98. But, in order to entitle one to relief of this character, the evidence, by which the alleged mistake is established, must be clear and convincing. Whitt v. Whitt, 145 Ky.

367, 140 S. W. 570. Where the evidence is conflicting, the relief will not be granted, even though a preponderance of the evidence supports the allegation of mistake. Payne v. Sebree, 14 Ky. Law Rep. 862.''

And further states:

''The province of a court of equity is to correct or reform the writing so as to express what the parties actually agreed to. The mistake must be that of both parties, one occurring in the drafting of a writing, as makes it convey the intent or meaning of neither party to the contract. To reform an instrument to accord with the intent of one of the parties, when the other is insisting it correctly expresses the agreement as understood by him, the writing thus altered would be just as far from expressing the agreement of the parties as before, and, as said in Diman v. Providence, Warren & Bristol R. Co., 5 R. I. 130: 'The court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other.' ''

We feel that this rule, declaring under what conditions a chancellor should direct the reformation of a written instrument, to the end of making it conform with the alleged prior agreement of the parties, is too well settled to call for further citations of authority, either case or text-book, in its support. The evidence as to what was the contract of the parties, if any, or as to whether any contract for insurance was in fact entered into between the parties on March 10, 1927, as alleged by appellant, being decidedly conflicting, it must needs follow that the court properly declined to reform the policy so as to conform its date with that of appellant's alleged agreement had with the plaintiff insurance company, when it equally as strongly contended that no such time agreement was in fact made with appellant.

We will now consider the final contention made by appellant that the judgment was erroneous in awarding appellee recovery for $505.75 and in not awarding the appellant judgment upon its counterclaim for $282.47 against appellee.

Appellant in support of this contention cites the

stipulation of parties found in the record providing that, in the event reformation of the policy was not allowed, the amount of recovery of unpaid premiums upon its compensation policy should be limited to $412.75, and further contends that in making this stipulation the parties had in mind the appellant's expenditure in the sum of $450 in defense of the Gilliam compensation claim, set out in defendant's answer, which represented a payment of such sum by the defendant in the defense and adjustment of Gilliam's claim to compensation for injuries received as an employee of appellant between the dates of March 10 and April 13, 1927, and which liability payment appellant further contended should have been reimbursed it by the plaintiff as being a liability covered and provided for by the compensation policy, which was then effective, it contends, at such date according to the agreement of parties as above herein set out.

However, the right to recover this amount of $450 alleged paid by the appellant would depend on whether or not the compensation policy should have been adjudged as in effect at the time of the occurrence of the Gilliam injury, upon which his claim was based. This contention of appellant therefore should not prevail, inasmuch as we have concluded that appellant was not entitled to have reformation of the compensation policy changing its effective date, as the evidence introduced in support thereof was insufficient to maintain its claim. Likewise, being of the opinion, as also hereinabove stated, that appellant had become, through its acceptance and retention of the public liability policy issued it by plaintiff, liable for the payment of the premiums thereby provided, it must follow that the appellant is not entitled to ask credit upon the $412.22 agreed amount owing upon the compensation policy premium by the $75 paid by appellant upon the liability policy premium nor should it be released from the $168.22 amount, by the lower court adjudged as the balance due upon the premium on the public liability policy, up until time canceled.

Therefore, we conclude that the appellant's contention that the court erred in refusing to allow its counterclaim for $282.47 and in awarding judgment to the plaintiff for $505.75 is without merit and that the

ruling of the lower court in so adjudging was without error.

Perceiving no error in the judgment of the lower court complained of, we are of the opinion that the same should be, and is hereby, affirmed.