## 56965. SCOTT TRANSFER, INC. et al. v. EXCALIBUR INSURANCE COMPANY, INC.

QUILLIAN, Presiding Judge.

Appellants, defendants below, procured insurance from Excalibur Insurance Company, Inc. covering operation of defendants' trucking companies. Coverage began August 1, 1975. Between August 1, 1975 and mid-November, 1975 defendants were involved in incidents requiring claims settlements from Excalibur approximating $50,000. By letter dated December 11, 1975, Excalibur notified appellants of its intent to cancel their insurance—nine days later. Appellant Scott called Excalibur and indicated he wished the insurance coverage to continue. On December 15, 1975, Mr. Hilton, Excalibur's president, notified Mr. Scott that they would be willing to continue the insurance, but only on a "retrospective basis."

On or about December 17, 1975, Mr. Hilton and his son, on behalf of Excalibur, and Mr. Scott, on behalf of his companies, met in Scott's office and discussed the "retrospective insurance" coverage for appellants. Excalibur's president testified that they "reviewed the written proposal which [they] brought with [them] in detail" with Mr. Scott. He explained "a retrospective plan of insurance" to him. Essentially, it was "a basis of self-insurance for the insured" where he deposits a monthly premium with the company from which the insurance company pays losses incurred, and at the end of the policy period if the losses paid are less than the money which had been deposited, the surplus is returned. But if

the losses are greater than anticipated an additional premium is assessed. Mr. Hilton stated that Mr. Scott "indicated a familiarity with not only the retrospective, but indicated that at one time he had been self-insured, and was probably contemplating being self-insured again . . ." Mr. Scott "had been in business for some thirty, thirty-five years." Mr. Hilton testified that "Mr. Scott agreed to accept the [insurance company's] proposal, with an effective date of October 1."

On December 18, 1975, Mr. Hilton sent a letter to Mr. Scott "confirming the coverage and the acceptance of the proposal by Mr. Scott." On December 24, 1975, Excalibur forwarded to Mr. Scott the retrospective insurance policies — effective October 1, 1975. Excalibur did not receive a response from Mr. Scott to their letter or receipt of the insurance policies. Excalibur billed Scott in January for the December premium. Scott paid the December premium in January. By letter, dated February 25, 1976, Mr. Scott canceled the "retrospective" insurance "effective January 15, 1976." Excalibur forwarded to Scott an "earned premium report" for $8,748.80, which was later revised to include an additional $1,000 for payment of "a cargo deductible" paid by Excalibur for which they were entitled to reimbursement under the policy. Receiving no response from Scott to the billing plus a later demand by letter, Excalibur brought this action. The court found for Excalibur and Scott brings this appeal. *Held:*

1. Appellants contend the court erred in concluding the insurance policies written August 1, 1975, were canceled by agreement on December 17, 1975. They argue that the letter from Excalibur of December 11, 1975, giving nine days notice, was insufficient to effect cancellation of the first policies of insurance. We agree. See *Holcomb v. Southern Guarantee Ins. Co.*, 143 Ga. App. 788 (240 SE2d 128). However, we do not agree with their conclusory statement that "the retrospective policies which appellee herein contends became effective October 1, 1975, never became effective inasmuch as the earlier policies written August 1, 1975, were never cancelled."

The appellee does not contend that their letter of December 11 canceled the first policies. Appellee's

argument to the trial court and this court was that the first policies were canceled by mutual agreement of the parties with the retrospective policy being substituted for it as a result of the December 17 meeting between Excalibur's president and Mr. Scott.

The substitution of one insurance policy for another has been discussed by this court in *Ector v. Am. Liberty Ins. Co.,* 138 Ga. App. 519, 521 (226 SE2d 788), wherein we stated: "The modern approach followed by most jurisdictions is typified by the conclusion reached in Bumb v. American Home Assurance Co., 246 FSupp. 509, 514 (S. D. Cal., 1965): 'Cancellation by substitution of one policy for another may be effected by mutual agreement of the parties . . .' "

Legal text authors agree. "An insurance policy is in effect cancelled when another policy is substituted for it . . . If the substitution is authorized by the insured, however, it is effective even though the new policy had not been delivered nor the old one surrendered. . ." 6A Appleman, Insurance Law and Practice 601, 606, § 4194. "Where the substitute policy is issued by the same insurer, the act of substituting the policy is in effect the manifestation of mutual consent to the termination of the original policy and it is therefore not necessary that the parties comply with any provision applicable to unilateral cancellation." 17 Couch on Insurance 2d 415, § 67:40. Substitution of policies is evidence that the insurer and insured "have agreed that the original policy shall no longer be in force and that another shall take its place." Id. at 416; 12 Appleman, Insurance Law and Practice 206, § 7152. Formal acceptance of the new policy is not necessary for it to become effective, for such acceptance may be implied by the acts and conduct of the insured. Where the insured receives and keeps the policy, without notice to the insurer of any objection, payment of a premium is generally binding as an acceptance. 12 Appleman, Insurance Law and Practice 217, § 7154; 1 Couch on Insurance 2d 513, § 12:8; Sutherland Bros. v. Traveler's Ins. Co., 245 Ky. 756 (54 SW2d 340); Traveler's Ins. Co. v. Wolfe, 78 F2d 78 (6th Cir. 1935), cert. den. 296 U. S. 635 (56 SC 158, 80 LE 452).

In the instant case the insured received and kept the

substitute "retrospective insurance" policy and did not notify the insurer of any rejection. The insured paid the first premium. In fact, the insured was so certain of the effectiveness of the "retrospective" insurance policy that he canceled it. There is evidence to support the finding of the trial court and it will be affirmed. This enumeration is without merit.

2. The appellant has ignored Rule 18 (c) (1) of this court (Code Ann. § 24-3618 (c) (1)) which provides that "[t]he sequence of argument or arguments in the briefs shall follow generally the order of the enumeration of errors, and shall be numbered correspondingly."

The appellant has enumerated four errors but Part III of his brief contains no divisions. The second enumerated error alleges the court erred in finding the "retrospective policies became effective October 1, 1975." There is no second paragraph in Part III of the brief and we are unable to find the error enumerated being argued and it is considered abandoned. Rule 18 (c) (2) (Code Ann. § 24-3618 (c) (2)). The testimony of Excalibur's president was that "Mr. Scott agreed to accept the proposal [of retrospective insurance], with an effective date of October 1." Accordingly, the evidence authorized the finding of the trial court.

3. The third and fourth enumerated errors aver the court erred "in concluding appellants owe appellee $11,147.00 in premiums" and in rendering judgment for that amount. As stated earlier there are no paragraphs 3 or 4 in Part III of the brief and we are unaware of the basis for these enumerations. If it is the computation of the amount claimed due, one of Excalibur's officers testified as to the basis for the $1,000 "cargo loss deductible" which had been paid by Excalibur to a claimant and was recoverable under the contract of insurance. Appellee introduced an audit showing the computation of the premium for the Earned Premium Report. This was a sufficient basis for computation of the amount due.

Appellant argued "mistake of law" and "economic duress or business compulsion" in his brief. We will not consider these arguments for a number of reasons. First, they are not enumerated as error. See *Hibbert v. State,* 146 Ga. App. 887 (3) (247 SE2d 554). Secondly, they contain

no reference to the record or transcript to show that they were raised in the trial court and are considered abandoned under the Rules of this Court. Rule 18 (c) (2) (Code Ann. § 24-3618 (c) (2)). Last, appellant's answer did not aver any defense based on "mistake of law" or "gross injustice" if he was relying on Code § 37-204. Nor did his counterclaim list "mistake of law" or "economic duress" as a basis for his sole prayer for relief—recovery of premiums paid. These enumerations are without merit.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

ARGUED JANUARY 15, 1979 — DECIDED FEBRUARY 13, 1979.

*Gordon Hiles,* for appellants.
*Nall & Miller, Gerald A. Friedlander, James J. Brissette,* for appellee.