A01A1283. HARLEYSVILLE-ATLANTIC INSURANCE COMPANY
v. QUEEN et al.
(552 SE2d 436)

ELDRIDGE, Judge.

This case presents the issue of whether an insured can retroactively cancel a commercial general liability policy of insurance with one insurer upon acquiring a second policy from another insurer when a loss occurs after the retroactive cancellation date but prior to the written cancellation under OCGA § 33-24-44.1, because others' interests are affected with the loss. The claimant, who was injured, and the operator of a crane, as an additional insured under the policy, both acquired vested interests in the policy as a chose in action on the date of the casualty loss; therefore, the insured and insurer cannot mutually cancel the policy and impair the vested rights of others. Thus, we affirm the trial court's granting summary judgment against the insurer and for the insureds.

S & H Riggers & Erectors, Inc. ("S&H") is in the business of erecting precast concrete products. In January 1997, S&H obtained a commercial general liability policy of insurance from Harleysville-Atlantic Insurance Company through the Quarels Agency, S&H's insurance agent. The policy period was January 1997 through January 1998.

Tom Hoyt with the Quarels Agency advised William Smith, president of S&H, that he could obtain the commercial general liability insurance from Great American Insurance Company cheaper than from Harleysville-Atlantic and that after coverage was obtained, S&H should cancel the policy with Harleysville-Atlantic. The Great American policy was effective on June 1, 1997, and the premium was timely paid. Thus, Smith intended to cancel the Harleysville-Atlantic policy effective on June 1, 1997, to avoid double coverage.

Prior to cancellation, on June 9, 1997, a boom fell from a crane owned by S&H and operated by Larry G. Queen, its employee. William Martin, a nonemployee, was seriously injured. Both Great American and Harleysville-Atlantic were immediately put on notice by its insured of the loss against S&H.

About a week after the notice of the potential claim, Harleysville-Atlantic gave S&H a reservation of rights letter, because it understood that its coverage was to be cancelled effective June 1, 1997. Smith did not dispute the contents of the reservation of rights letter to S&H. In fact, on July 11, 1997, Smith sent a request for cancellation effective June 1, 1997, to Harleysville-Atlantic. "The above referenced policy is lost, destroyed or being retained. No claims of any type will be made against (Harleysville) under this policy for losses which occur after the date of cancellation shown above. Any premium adjustment will be made in accordance with the terms and

conditions of the policy."

On July 30, 1997, Harleysville-Atlantic prepared the cancellation memorandum for the S&H policy. The memorandum from Harleysville-Atlantic to S&H confirmed the retroactive cancellation date of June 1, 1997, at 12:01 a.m. Harleysville-Atlantic sent a separate letter to S&H confirming that the comprehensive general liability policy had been cancelled effective June 1, 1997. Harleysville-Atlantic returned to S&H the unearned premium of the cancelled policy. S&H kept the unearned premium and never rescinded the cancellation or tendered back the premium.

After Queen and S&H were sued, Harleysville-Atlantic was brought in by a third-party action by Queen and S&H, because Harleysville-Atlantic had $2,000,000 in coverage and Great American had $1,000,000. Harleysville-Atlantic, Queen, and S&H moved for cross-motions for summary judgment on the coverage issue. The trial court denied Harleysville-Atlantic's motion and granted the motions of Queen and Great American, holding that each insurer pay one-half of any judgment until coverage was exhausted.

Harleysville-Atlantic contends that the trial court erred in interpreting OCGA § 33-24-44.1 as not allowing a retroactive cancellation of the policy, in failing to find that the policy was cancelled by agreement of two relevant parties, and in failing to recognize that S&H had waived its ability to deny or retract its cancellation by accepting and retaining the refunded insurance premium. We are treating all the enumerations together, because all contentions are governed by OCGA § 33-24-44.1 (a) (1) and applicable case law.

In applicable part, OCGA § 33-24-44.1 reads:

> (a) An insured may request cancellation of an existing insurance policy by returning the original policy to the insurer or by making a written request for cancellation of an insurance policy to the insurer or its duly authorized agent stating a future date on which the policy is to be canceled. Such cancellation shall be accomplished in the following manner: (1) If only the interest of the insured is affected, the policy shall be canceled on the later of the date the returned policy or written request is received by the insurer or its duly authorized agent or the date specified in the written request; provided, however, that upon receipt of a written request for cancellation from an insured, an insurer may waive the future date requirement by confirming the date and time of cancellation in writing to the insured.

OCGA § 33-24-44.1 (a) (1); Ga. L. 1987, p. 1466, § 2; Ga. L. 1994, p. 344, § 1. The statutory description of the 1994 amendment states

that its purpose is "so as to provide that an insurer, upon receiving a written request from an insured for cancellation of a policy, the insurer may waive the future date requirement by confirming the date and time of cancellation in writing to the insured." Ga. L. 1994, p. 344.

Thus, the insured can use a retroactive date of cancellation if the insurer waives the future date requirement of the statute by confirming the retroactive cancellation date and time in writing to the insured, which was done in this case. But, there can be no mutual cancellation where a prior loss exists, as in this case. In such instance, the insured and insurer are powerless under the statute and case law to agree to cancel the policy after rights in others have vested, because the statute clearly, plainly, and unambiguously states that the insured can cancel "[i]f only the interest of the insured is affected."

> In case of cancellation, the manifest intention of the parties is to discharge the insurer from all future liability, and not to relieve him from any liability incurred under the contract. Thus, a policy of insurance may be cancelled at any time before loss, by an agreement between the parties, and such cancellation may be by the consent of the parties, express or implied from the circumstances, independently of the terms of the policy.

(Citations, punctuation and emphasis omitted.) *Sunbelt Life Ins. Co. v. Bank of Alapaha*, 176 Ga. App. 628, 629 (1) (337 SE2d 410) (1985); see also *Davidson v. State Farm &c. Ins. Co.*, 161 Ga. App. 21, 24-25 (288 SE2d 832) (1982).

> The substitution rule has gained no previous acceptance from Georgia courts and we can discern no reason for adopting the rule now. We thus conclude that the procurement of new insurance as an intended substitution for an existing policy does not constitute an effective cancellation of the policy unless the terms of the policy specifically provide for cancellation in this manner or the parties have otherwise mutually agreed upon this method of cancellation.

*Ector v. American Liberty Ins. Co.*, 138 Ga. App. 519, 521 (1) (226 SE2d 788) (1976); accord *Davidson v. State Farm &c. Ins. Co.*, supra.

In this case, Queen, as an additional named insured, acquired a vested interest in the additional $2,000,000 to indemnify him from liability and the additional rights of defense. See generally *Greenwood Cemetery v. Travelers Indem. Co.*, 238 Ga. 313, 317 (232 SE2d 910) (1977); *City of Atlanta v. St. Paul Fire &c. Ins. Co.*, 231 Ga. App.

206, 207-209 (498 SE2d 782) (1998). "Rights against insurer arise immediately upon the happening of the accident and cannot be destroyed by attempted subsequent cancellation, release or compromise by insured and insurer." (Citation and punctuation omitted.) *State Farm &c. Ins. Co. v. Kendall*, 104 Ga. App. 481, 485 (2) (122 SE2d 139) (1961); see also *Davidson v. State Farm &c. Ins. Co.*, supra at 24-25. To Martin, as a third-party beneficiary under the policy, if he obtains a judgment against Queen and S&H, the $2,000,000 is a chose in action to satisfy any judgment in excess of $1,000,000 against Harleysville-Atlantic. See OCGA §§ 44-12-20; 44-12-21; *Hammond v. City of Warner Robins*, 224 Ga. App. 684 (482 SE2d 422) (1997); *Davis v. Nat. Indem. Co.*, 135 Ga. App. 793, 795 (2) (219 SE2d 32) (1975); *Insured Lloyds v. Bobo*, 116 Ga. App. 89, 91 (156 SE2d 518) (1967). Therefore, both Queen and Martin, as of June 9, 1997, acquired vested interests in the Harleysville-Atlantic policy so that S&H by statute had no right to cancel the policy. OCGA § 33-24-44.1 (a), (e). Likewise, Harleysville-Atlantic had actual notice of the loss and interests of both Queen and Martin when it sent its reservation of rights letter and the confirmation of cancellation. See *State Farm &c. Ins. Co. v. Kendall*, supra at 485 (2). By statute, Harleysville-Atlantic could not cancel the policy at S&H's request, because the policy cancellation by the insured "shall be canceled in accordance with this Code section" only, and there were other interests affected by the cancellation which had not consented to cancellation. OCGA § 33-24-44.1 (a) (1), (e); *Progressive Preferred Ins. Co. v. Davis*, 199 Ga. App. 598, 599 (405 SE2d 529) (1991); see generally *Pennsylvania &c. Ins. Co. v. Employers' Fire Ins. Co.*, 118 Ga. App. 655, 658 (1) (165 SE2d 309) (1968) (statutory notice of cancellation not given to mortgagee of a policy with a standard mortgage clause; thus, cancellation was not effective as to the mortgagee); *State Farm &c. Ins. Co. v. Kendall*, supra at 485 (2) (insured, after motor vehicle collision, cannot agree with insurer to cancel liability policy).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur. Andrews, P. J., disqualified.*

DECIDED JULY 3, 2001 —

*Webb, Zschunke, Miller & Dikeman, William E. Zschunke, Melissa C. Duffey*, for appellant.

*Mabry & McClelland, Joan G. Crumpler, Robert M. Darroch, Sherrod & Bernard, John W. Sherrod*, for appellees.