NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0464n.06

Case No. 14-5500

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | **FILED** |
|  | ) | Jun 22, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
|  | ) | KENTUCKY |
| HAROLD WILKERSON, | ) |  |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |
|  | ) |  |

BEFORE: SILER, MOORE, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge. Defendant Harold Wilkerson ("Wilkerson") appeals the district court's grant of summary judgment in favor of Cincinnati Insurance Company ("CIC"). The district court found that there was no coverage available to Wilkerson for injuries sustained by a minor on Wilkerson's premises under the CIC policy at issue. For the following reasons, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

**I.**

In 1997, Wilkerson purchased the property located at 221 W. Main Street, Campbellsville, Kentucky (the "Property" or "221 W. Main") at an auction. The plat shows that the Property was divided into three lots—all sharing the same address.

At the time that Wilkerson purchased the Property, there were two buildings located at 221 W. Main—a hotel apartment complex (where the rooms open to interior hallways) on Lot One and an abandoned single story motel (where the rooms open directly to the outside) on Lot Two. Lot Three was vacant. Today, there are only ruins of the structure on Lot One, and the previously-abandoned motel on Lot Two has been renovated into apartments.

Wilkerson initially had insurance through Ohio Casualty for 221 W. Main, which afforded coverage for property damage to the hotel apartment complex on Lot One. The policy was not renewed at the end of the policy period. Thereafter, the Taylor County Bank, which held the mortgage on the Property, purchased insurance for 221 W. Main. The insurance included both liability insurance for 221 W. Main and coverage for property damage to the hotel. The hotel remained in operation until 2003 or 2004 when the building caught fire. While the hotel was closed pending a fire marshal's investigation, it was vandalized and ransacked, which made it impractical to repair. The hotel has remained vacant since the fire. The Property remained uninsured from shortly after the fire—when the policy obtained by the bank covered the bank's interest—until early 2008.

In 2007, Wilkerson contacted his insurance agent, Scott Jessie ("Jessie"), because he needed coverage for an unrelated property in Greensburg, Kentucky. Wilkerson applied for and received a policy of insurance with a three-year coverage term—from November 28, 2007 to November 28, 2010.

Also in 2007, Wilkerson decided to convert the abandoned motel at 221 W. Main (Lot Two) into apartments. Because the bank that financed the renovation required insurance, Wilkerson contacted Jessie and informed him that the bank wanted him to obtain insurance for 221 W. Main. A "Commercial Policy Change Request," listing 221 W. Main for the "Premises

Information," was submitted to CIC in January 2008.[1]  Thereafter, an endorsement to the Policy amended the "Schedule of Locations" and "Limitation of Coverage to Designated Premises or Project Form" to include 221 W. Main.

In October 2010, prior to the expiration of the Policy period, a trespassing minor was injured in the abandoned building located on Lot One.  In 2013, the minor's appointed guardian filed a personal injury complaint in the Taylor County Circuit Court ("state court complaint") against Wilkerson.  The state court complaint alleged that Wilkerson failed "to maintain the building and the property upon which it is located to ensure the safety of children who would find said property to [be] an 'attractive nuisance.'"

Thereafter, CIC filed a complaint for declaratory relief, pursuant to 28 U.S.C. §§ 1332 and 2201, in federal district court, alleging that, under the Policy, it "d[id] not owe either indemnification and/or a defense to Defendant Wilkerson for the claims asserted against him" in the state court complaint.

The district court granted summary judgment in favor of CIC.  It found that the Policy was unambiguous.  Specifically, it found that the coverage did not extend to the vacant hotel on Lot One because the Policy's endorsement limited coverage to Lot Two—the location of the renovated apartment building.  The court also found that reformation was not proper because there was no mutual mistake as to the scope of the Policy.  Because the court found that the Policy did not provide coverage for the minor's injuries, it did not address the parties' arguments about whether Wilkerson provided timely notice in accordance with the Policy's requirements.

---

[1] The "Policy" referenced throughout this opinion collectively refers to the commercial general liability insurance policy issued to Wilkerson in November 2007 for the Greensburg property, along with the policy endorsement from January 2008 extended coverage to 221 W. Main.  Wilkerson also purchased commercial property insurance on both properties, but that portion of the policy was not presented to the district court.

**II.**

"We review a grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

In diversity cases, we are bound to apply the same law as would be applied by the state courts. *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997). Under Kentucky law, "[i]t is well settled that the proper interpretation of insurance contracts generally is a matter of law to be decided by a court." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). "[D]etermining whether a contract is ambiguous," the Kentucky Supreme Court advises, also "is a question of law for the courts." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). "Under the doctrine of reasonable expectations, followed in Kentucky, when the language of an insurance policy is ambiguous, the ambiguity must be construed in favor of the insured and benefits granted in accordance with the reasonable expectations of the parties." *United States Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145, 147 (Ky. 2000); *see also Senn's Adm'x v. Michigan Mut. Liability Co.*, 267 S.W.2d 526, 527 (Ky. 1954) ("It is also the rule that where an insurance contract is ambiguous or susceptible of different meanings, it will be construed most strongly against the insurer who prepared it.").

In this case, Wilkerson initially obtained an insurance policy for a property in Greensburg. Shortly thereafter, Wilkerson contacted his agent to add 221 W. Main to the Policy. The relevant provisions of the Policy at issue are set forth below.

The Policy's "COMMERCIAL GENERAL LIABILITY COVERAGE FORM" provides, in relevant part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "*bodily injury*" or "property damage" *to which this insurance applies*. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Emphasis added.) The endorsement to the Policy amended the "Schedule of Locations," to include 221 W. Main. Additionally, the endorsement amended the "Limitation of Coverage to Designated Premises or Project" to "include the above location"—221 W. Main. The "Limitation of Coverage to Designated Premises or Project" makes clear that the insurance applies to "bodily injury." Specifically, it states that:

This insurance applies only to "bodily injury" . . . arising out of:

1.     The ownership, maintenance or use of the premises shown in the *Schedule* and operations necessary or incidental to those premises . . .

(Emphasis added.)

The endorsement also amended the declarations for the commercial general liability coverage to add a classification for renting out nine single-family dwellings and listed the associated code and corresponding changes to the premium:[2]

Additionally, the endorsement makes clear that the Policy provides coverage for *property damage* liability to one dwelling at 221 W. Main. Specifically, the endorsement provides the following:

---

[2] The General Change Endorsement amended a table on the Declarations Page, GA 501. In the bracketed text above, we reproduce the column titles for the text added by the endorsement.

AMENDING COMMERCIAL GENERAL LIABILITY FORM GA501 TO INCLUDE:

| [CLASSIFICATION] | [CODE NO.] | [PREM. BASE] | [RATE] | [ADV. PREMIUM] |
|---|---|---|---|---|
| DWELLINGS-1 FAMILY INCL PROD AND/OR COMP OP | 63010 | E)9 EACH | 54.559 | 491 |

The only mention of the classification in the rest of the Policy is found in an unrelated aspect of coverage. Finally, the endorsement also altered the Commercial Property portion of the Policy, which was not filed with the district court, to add coverage for damage to the motel building.

On appeal, Wilkerson argues that the district court misunderstood the scope of the premises. He claims that the district court "erred by considering the recorded plat of [his] property as having divided it into three separate lots."

In this case, it is clear from the endorsement that the Policy covered 221 W. Main. However, the Policy was ambiguous as to the boundaries of the Property. Put another way, the district court needed to look beyond the Policy to determine the boundaries of 221 W. Main. And the district court did look to the plat and focused on the three distinct "lots" depicted on the plat. But collectively, the three "lots" shared one address—221 W. Main.

The Policy at issue here provides general liability insurance, including—coverage for bodily injury. As set forth above, the Policy states that it "applies only to 'bodily injury' . . . arising out of . . . [t]he ownership, maintenance, or use of the premises shown in the Schedule." Because the endorsement amended the "Limitation of Coverage to Designated Premises or Project" form to include 221 W. Main on the "Schedule" of premises covered by the Policy, it follows that the Policy provides insurance coverage for "bodily injury" liability that arises out of the ownership of 221 W. Main. Here, the child was injured at 221 W. Main. For purposes of coverage for bodily injury, it does not matter on what "lot" the injury occurred so long as it

occurred on the Property. Therefore, the district court improperly relied on the three "lot" distinction on the plat to deny coverage.

There is a superficial ambiguity created by the fact that the Policy mentions the classification for single-family dwellings (Code No. 63010) but does not mention any classification for a vacant building.[3] Taken in isolation, that incomplete accounting could cast doubt over whether the parties had a mutual understanding of the true boundaries of 221 W. Main. However, there is nothing in the Policy to indicate that the liability coverage was limited to the classification listed on the declaration form. Nothing in the Policy would have led Wilkerson to reasonably expect that the liability would be excluded. *See also Aetna Cas. & Sur. Co. v. Freeman*, 427 S.W.2d 220, 222 (Ky. 1968) (broadly construing the classification of operations on a workers' compensation insurance policy).

Nor is the scope of the Commercial General Liability coverage affected by the fact that the Commercial Property policy was amended to insure only the motel building. It is not unreasonable for a Commercial Property insurance policy to omit structures that either do not have any assessed value or are not covered for that purpose, and for the related Commercial General Liability policy to nonetheless cover the entirety of the premises. In fact, Jessie conceded the reasonability of this practice in his deposition testimony:

> Q. Of course, we're talking about this in terms of buildings and locations, but in reality, this is a liability claim that under—undergirds everything that we're talking about. In a particular circumstance, and we'll go back to our example where you said, "If I write a farm that has five barns on it" –

---

[3] These classifications and classification codes are issued by the Insurance Services Office ("ISO"), which was founded as an association of insurance companies. The ISO drafts standardized policy forms and provides research support for underwriting. *See Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 772 (1993). The ISO classifications are used to assess the appropriate risk level and premium rates for particular insured activities. *See* 2-9 New Appleman Law of Liability Insurance § 9.03 (Mathew Bender, Rev. Ed.).

A. Right.

Q. When you do that and you exclude some of those barns, you're excluding them for the purpose of property damage claims, right?

A. That's correct.

Q. You're not excluding them for liability claims, are you?

A. No.

Q. The liability claims attach to the property address, do they not?

A. Right, it's apples and oranges, the property and liability claims.

Q. For example, somebody who gets hurt on that farm with the five barns down at the pond between barns three and four is likely to have coverage under the liability provision of the policy, right?

A. Gets hurt down at the barn?

Q. Gets hurt at the pond between the barns? If you're covering the farm, you're covering the farm, right?

A. Right. If we're covering the farm, we would insure it as a farm and cover the farm, yes.

Q. Right. And so when you do liability coverage, it actually attaches to the address, not the particular structures, correct?

A. The address given?

Q. Yeah?

A. I mean, most of the cases, yes.

This industry practice acknowledged by CIC's agent allows us to reconcile the apparently conflicting contractual terms and resolve the ambiguity in favor of a reading that extends liability

coverage for bodily injury to the entirety of the premises at 221 W. Main. Accordingly, we conclude that the Policy provided coverage for "bodily injury" occurring at 221 W. Main.

## III.

Although we have found that there is coverage under the Policy, there are two arguments that could ultimately defeat coverage under the Policy. In its summary judgment brief, CIC raised two alternative arguments in the event the district court found the child's injuries were covered—mutual mistake and failure to comply with the Policy's notice provision. CIC raised its mutual mistake argument on appeal, but it did not raise its notice argument.[4]

## A.

Under Kentucky law, "an insurance policy may be reformed the same as other written instruments, if, by reason of mutual mistake, or mistake on one side and fraud on the other, it does not conform to the real agreement." *Aetna Ins. Co. v. Steele*, 299 S.W. 1091, 1092 (Ky. 1927). Three elements must be established to reform a contract based on mutual mistake. First, CIC "must show that the mistake was mutual, not unilateral." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006). Second, "the mutual mistake must be proven beyond a reasonable controversy by *clear and convincing evidence.*" *Id.* (quoting *Campbellsville Lumber Co. v. Winfrey*, 303 S.W.2d 284, 286 (Ky. 1957)) (emphasis in original). Third, "it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument." *Id.* (quoting *Campbellsville Lumber*, 303 S.W.2d at 286).

CIC argues that the Policy was issued based on a mutual mistake as to the scope of coverage. Specifically, CIC claims that both Wilkerson and Jessie only intended for the Policy to provide liability coverage for the renovated apartment building on Lot Two—not the

---

[4] Either of these arguments, if found persuasive, could relieve CIC of its obligations under the Policy.

abandoned hotel on Lot One. Without providing a citation to the record, CIC states in its brief that, "[d]espite [Wilkerson's] earlier admissions that he did not intend to purchase coverage for the vacant hotel when he added the renovated structure at 221 W. Main to his policy, Wilkerson now contends that his agent erred in obtaining coverage limited to only the renovated structure at 221 W. Main."

CIC appears to have misconstrued the record on this point. Nowhere in the record does Wilkerson state that he did not intend to purchase coverage for the vacant hotel. In fact, Wilkerson testified that he "called [Jessie] and informed him that Taylor County Bank was wanting insurance on the property." During their conversation, Wilkerson told Jessie that he wanted insurance for 221 W. Main. Accordingly, the record does not support CIC's assertion that Wilkerson admitted that he did not intend to cover the vacant hotel. Wilkerson testified that he made no reference to the abandoned hotel at all. By contrast, Jessie testified that he knew that Wilkerson owned the abandoned hotel but did not know that the abandoned hotel shared the same street address—221 W. Main—as the renovated apartment building. Jessie also testified that if he knew that the abandoned hotel was located on 221 W. Main he would not have written a policy that included liability coverage for that structure.

CIC cannot show that both "parties had actually agreed upon terms different from those expressed in the written instrument," *Abney*, 215 S.W.3d at 704 (quoting *Campbellsville Lumber*, 303 S.W.2d at 286), because, as discussed above, the contract is written the way Wilkerson would expect. Wilkerson asked for coverage for 221 W. Main. Jessie testified that it is the industry practice for commercial general liability coverage to attach to the property, whereas commercial property coverage is determined on a structure-by-structure basis. Construing the evidence in the light most favorable to Wilkerson, the nonmoving party, and construing any

contractual ambiguities in favor of Wilkerson, the insured, CIC is not entitled to reformation because it has not shown by clear and convincing evidence that the parties agreed upon terms different from those in the Policy.

**B.**

CIC also argued at the summary judgment stage that any obligation of coverage was negated by Wilkerson's failure to provide timely notice of the child's injury.[5] The district court declined to address this issue because it concluded that there was no coverage under the Policy. CIC did not raise its notice argument on appeal. Because there is coverage under the Policy and the question of whether there was deficient notice resulting in prejudice to CIC has not been raised before us, we reverse and remand to the district court to decide the notice issue. *See Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 801 (Ky. 1991) (holding that "an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured").

**REVERSED AND REMANDED.**

---

[5] The Policy provides that the insured has the duty to notify CIC "as soon as practicable" of an "occurrence" that may result in a claim. The Policy also provides that if a claim or suit is brought against the insured, then the insured must notify CIC "as soon as practicable." Here, the child was injured in October 2010, and Wilkerson learned of the child's injuries shortly thereafter. Wilkerson was not sued until March 2013. Wilkerson testified that he informed Jessie immediately after the suit was filed. Wilkerson also testified that the reason he did not notify Jessie upon learning of the accident is because: (1) the child's mother was a patient of his; (2) the child's mother informed him that the child should not have been on his property; and (3) he did not believe a claim would be pursued.