## 51952. ECTOR et al. v. AMERICAN LIBERTY INSURANCE COMPANY.

CLARK, Judge.

Does the procurement of new insurance with the uncommunicated intent that it take the place of existing insurance constitute in and of itself an effective cancellation of the existing policy? The trial court answered this question affirmatively and granted summary judgment to defendant insurer in plaintiffs' suit for recovery under their original fire insurance policy. On appeal, plaintiffs contend that the court erred in denying their motion for summary judgment and also in entering judgment for defendant.

The facts are undisputed. On December 16, 1972, defendant American Liberty Insurance Co. issued to plaintiffs a fire insurance policy stipulating three years coverage with premiums to be paid annually. These premiums were paid through B. M. Grant Co. which concern was the servicing agent for the holder of a loan deed on the insured residence of the plaintiffs. Under this arrangement, now standard with residential mortgages, payments of insurance premiums and taxes are made by the lender's servicing agent from an escrow account created out of the borrowers' monthly mortgage payments.

On January 24, 1974, on their own initiative and without the knowledge of the mortgage servicing concern, plaintiffs purchased a home owners insurance policy with the Horace Mann Insurance Co. for the purpose of substituting this policy with increased limits for the American Liberty policy. They paid the premium for this new policy from their funds and not through the escrow account. Their intention was to cancel their American Liberty policy as of February 1, 1974, the effective date of the new Horace Mann policy. They communicated this intention to cancel to the Horace Mann salesman who offered to "take care" of this cancellation of the policy with defendant but never in fact did so. Thus, when plaintiffs' house burned as a total loss on February 16, 1974, notice of cancellation had never been sent to defendant by plaintiffs nor by any agent acting in their behalf. In fact

on that date, the files of the servicing agent showed coverage for the plaintiffs from both Horace Mann and American Liberty.

Grant had received notification of the new policy from Horace Mann on February 11, 1974, but this notification contained no reference to cancellation of plaintiffs' policy with defendant. Although plaintiffs had never communicated to Grant their desire to cancel the Liberty policy the servicing agent sent American Liberty a cancellation notice on March 6, 1974. This notice stated that the policy which the plaintiffs had with defendant should be canceled as of February 1, 1974, the effective date of the Horace Mann policy. The delay in notification was due to there being a "backlog" in the Grant office.

Defendant treated the plaintiffs' policy as having been canceled on the previous February 1 date on the basis of the Horace Mann policy having the effective date of February 1, and accordingly, refused to pay under their policy for the damages of the February 16th fire.

This suit was filed by the insureds under the provisions of a "loan receipt" furnished by Horace Mann. This is customary in the insurance industry and authorizes suit to be filed in the name of the insured with legal proceedings to be under the insurer's control.

Following discovery, both parties moved for summary judgment. The court found the "clear intention" of the plaintiffs to cancel their policy with defendant and the issuance of the Horace Mann policy in substitution thereof constituted an effective cancellation by the plaintiffs of their policy. Summary judgment was accordingly granted to defendant and plaintiffs' motion was denied. *Held:*

1. "A number of cases, most of them of fairly early origin, give some support to the proposition that the taking out of a new policy of property insurance, with the intention on the part of the property owner that it take the place of the existing insurance, in and of itself constitutes a cancellation of the existing insurance." Annot., 3 ALR3d 1072, 1073. See Strauss v. Dubuque Fire & Marine Ins. Co., 132 Cal. App. 283 (22 P2d 582) (1933); Ohran v. National Auto Ins. Co., 82 Cal. App. 2d 636 (187

P2d 66) (1947); Bache v. Great Lakes Ins. Co., 151 Wash. 494 (276 P 549) (1929).

The so-called "substitution rule" is presently rejected, however, by the vast majority of jurisdictions. California courts, which gave early acceptance to this rule, have now abandoned it. See Glens Falls Ins. Co. v. Founders' Ins. Co., 209 Cal. App. 2d 157 (25 Cal. Rptr. 753) (1962). The modern approach followed by most jurisdictions is typified by the conclusion reached in Bumb v. American Home Assurance Co., 246 FSupp. 509, 514 (S. D. Cal., 1965): "Cancellation by substitution of one policy for another may be effected by mutual agreement of the parties. . . However, the mere procurement of additional insurance without requesting the original insurer to cancel its policy does not terminate the policy." See also Baysdon v. Nationwide Mutual Fire Ins. Co., 259 N. C. 181 (130 SE2d 311) (1963); Northern Ins. Co. of New York v. Mabry, 4 Ariz. App. 217 (419 P2d 347) (1966); Ins. Co. of Pa. v. Smith, 435 F2d 1029 (10th Cir., 1971).

The substitution rule appears to have no logical basis within the law of contracts. On a theoretical level, the rule is inconsistent with the generally accepted principle that contracts can only be terminated by agreement of the parties, by the terms of the contract itself, or by operation of law. As a matter of public policy, the substitution rule fails to advance any purpose which might support its adoption by courts. And finally, on a practical level, the rule tends to increase uncertainty as to the very existence of the contract by allowing cancellation to be effected by the subjective intent of the insured and without any notice to the insurer.

The substitution rule has gained no previous acceptance from Georgia courts and we can discern no reason for adopting the rule now. We thus conclude that the procurement of new insurance as an intended substitution for an existing policy does not constitute an effective cancellation of the policy unless the terms of the policy specifically provide for cancellation in this manner or the parties have otherwise mutually agreed upon this method of cancellation.

2. "[T]he burden of proving a cancellation of a policy of insurance is upon the party asserting such cancellation.

[Cit.]" *Farmers Mut. Fire Ins. Co. v. Harris,* 50 Ga. App. 75, 82 (177 SE 65). Inasmuch as defendant failed to introduce into evidence the policy provisions of the insurance contract, it has failed to show in what manner, if at all, cancellation could be effected by the plaintiffs.[1]Even if we assume that the policy provided for cancellation at any time by the insured, with no prescribed manner for effectuating the cancellation, termination of the contract requires at the minimum notice or a request for cancellation communicated to the insurer. *DeLaPerriere v. American Home Assur. Co.,* 106 Ga. App. 516 (127 SE2d 478); *Bankers Mut. Cas. Co. v. Peoples Bank of Talbotton,* 127 Ga. 326 (56 SE 429); Fidelity Mut. Life Ins. Co. v. Merchants & Mechanics Bank, 71 F2d 777 (5th Cir., 1934); 45 CJS Insurance 115, § 458. "A mere intention to cancel, not communicated to insurer, is not sufficient to effect a cancellation by the insured. [Cits.]" Baysdon v. Nationwide Mutual Fire Ins. Co., supra.

The record shows that defendant issued to plaintiffs a fire insurance policy which covered plaintiffs' house on the date of the catastrophe. The premium for this policy was fully paid and no request for nor notice of cancellation was ever communicated by plaintiffs to defendant or any of its agents. Defendant has failed to show that the policy terms provide for cancellation by merely procuring a substitute policy or that the insured effected a cancellation pursuant to any term in the contract. The trial court's grant of summary judgment was therefore error.

3. Where the grant of a motion for summary judgment is appealed, it is now permissible for the denial of a motion for summary judgment to be appealed simultaneously, and this without a certificate for immediate review. *Ga. Motor Club v. First Nat. Bank,* 137 Ga. App. 521. The trial court did not err in denying plaintiffs' motion for summary judgment. Even though

---

[1]It is not argued that cancellation was effected by the insurer. Clearly, the terms of Code Ann. § 56-2430, which govern such cancellations, were not complied with here.

the burden of showing cancellation is upon the defendant at trial, plaintiffs are not entitled to summary judgment unless they negative this claim by showing that no genuine issue of material fact exists with reference to this issue. *Southern Bell Tel. Co. v. Beaver,* 120 Ga. App. 420, 422 (170 SE2d 737). Plaintiffs' failure to introduce in evidence the policy provisions of their contract with defendant leaves open the possibility that the policy provides for cancellation by substitution and that plaintiffs' actions were in accordance with a contractually prescribed manner for cancellation. Although the existence of such a provision was not proved by defendant, plaintiffs would have to show the non-existence of such a provision in order to negate fully defendant's claim of cancellation. Accordingly, plaintiffs were not entitled to summary judgment.

*Judgment affirmed in part and reversed in part. Bell, C. J., and Stolz, J., concur.*

ARGUED APRIL 5, 1976 — DECIDED MAY 4, 1976.

*Long, Weinberg, Ansley & Wheeler, George H. Connell, Jr.,* for appellants.

*Ross & Finch, I. J. Parkerson,* for appellee.