62478. DAVIDSON v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
62479. JAYNE et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

CARLEY, Judge.

Davidson's son was killed on May 16, 1979, in a collision involving a vehicle which was being operated by, but not owned by, Jayne. On October 16, 1979, Jayne was informed by his liability insurer, State Farm, that he would not be afforded coverage for the collision under his policy. In 1980 Davidson filed a wrongful death action, naming as defendants therein Jayne and the owners of the vehicle Jayne was driving at the time of the collision. Jayne answered Davidson's complaint and also filed his own third-party complaint against State Farm. The allegations of the third-party complaint were that State Farm "is or may be liable to [Jayne] for all or part of the damages claimed by [Davidson] . . . in that at the time of the incident complained of by [Davidson] . . . there existed between [Jayne] and [State Farm] a contract of automobile insurance, . . . , which afforded [Jayne] coverage against said claims of [Davidson]." State Farm answered the third-party complaint by asserting that Jayne was not afforded liability coverage under the policy in force at the time of the collision for any claims arising therefrom.

After discovery, Jayne and State Farm filed cross motions for summary judgment on the third-party action. After conducting a hearing on the motions, the trial court granted State Farm's motion and denied Jayne's. In Case No. 62478 Davidson has filed a notice of

appeal from the order of the trial judge, enumerating as error the grant of State Farm's motion for summary judgment on Jayne's third-party action. In Case No. 62479 Jayne has filed a notice of appeal from the order of the trial court, enumerating as error the grant of State Farm's motion and the denial of his own. As both appeals are taken from the same order, they are consolidated for review.

*Case No. 62478*

1. State Farm has filed a motion to dismiss this appeal and the first issue which must be resolved is whether Davidson, the plaintiff in the underlying tort action, has standing to appeal from the grant of summary judgment to State Farm in the third-party action.

The only issue which could have been raised in the third-party action — and which was in fact resolved by the grant of summary judgment — was that of State Farm's *secondary* liability to Jayne for the death of Davidson's son. See *Firestone Tire &c. Co. v. Pinyan,* 155 Ga. App. 343, 345 (270 SE2d 883) (1980). The issue of State Farm's primary liability to Davidson as Jayne's insurer was not resolved, and could not have been resolved, by the grant of summary judgment to State Farm on the third-party action. The issue of State Farm's primary liability, if any, to Davidson is not "ripe" for resolution until and unless Davidson obtains a judgment against Jayne or otherwise establishes Jayne's liability for his son's death. See generally *Arnold v. Walton,* 205 Ga. 606, 609 (2) (54 SE2d 424) (1949); *Hodges v. Ocean Acc. & Guar. Corp.,* 66 Ga. App. 431 (18 SE2d 28) (1941); *Seaboard C. L. R. Co. v. Freight Del. Ser.,* 133 Ga. App. 92, 95 (3) (210 SE2d 42) (1974). It follows that Davidson is not "aggrieved" by the grant of summary judgment to State Farm on the third-party action, which established *only* State Farm's non-liability to Jayne. See generally *Jones v. Crown Const. Co.,* 152 Ga. App. 578, 579 (2) (263 SE2d 460) (1979). The motion to dismiss is thus meritorious. If and when Davidson establishes Jayne's tort liability for the death of his son and *Davidson's own claim* against State Farm as Jayne's purported liability insurer matures, he will then be entitled to assert that claim in an action wherein State Farm will not be allowed to assert the grant of summary judgment to Jayne as having res judicata or estoppel by judgment effect. See *Firestone,* 155 Ga. App. at 344 (2), supra. "The reason that verdicts and judgments conclusively bind only parties and privies is because privies in blood, privies in estate, and privies in law claim under the party against whom the judgment is rendered; and they, claiming his rights, are of course bound as he is; but as to all others, judgments are not conclusively binding, because it is unjust to bind one by any proceeding in which he had no opportunity . . . to

appeal." *Blakewood v. Yellow Cab Co.,* 61 Ga. App. 149 (3) (6 SE2d 126) (1939).

### Case No. 62479

2. It is undisputed that Jayne was insured by a policy issued by State Farm which, if in force and effect on May 16, 1979, afforded liability coverage for the fatal collision. However, on May 14, 1979, two days before the collision, Jayne's mother had made a telephone call to State Farm's agent. Apparently Jayne had authorized his mother to contact the agent and to inform him that Jayne's 1967 Cougar, the insured vehicle under the policy, had been sold and replaced by a motorcycle for which insurance coverage was desired "under his insurance policy with State Farm . . ." According to Jayne's mother's version of the telephone conversation she relayed this information and only this information to the agent. Mrs. Jayne's affidavit avers that "except for the description of the motorcycle, no further conversation transpired between her and [State Farm's agent] relating to the automobile liability insurance coverage provided to her son, . . . , by State Farm . . ." The agent's version of the conversation is significantly different. According to the agent, Mrs. Jayne specifically requested that the policy providing coverage on the automobile "be cancelled, . . ., and that a new . . . insurance policy providing insurance coverage on [the] motorcycle should be issued."

Whatever the substance of the conversation of May 14, 1979, it is undisputed that State Farm deemed Jayne's automobile liability coverage cancelled as of that date and considered that his sole coverage thereafter was pursuant to an oral binder of that date and subsequently issued motorcycle policy. Since State Farm considered Jayne as being insured on May 16, 1979, only under the motorcycle policy and since under the terms of that policy liability coverage was provided only for claims arising from the insured's use or operation of a non-owned *motorcycle,* State Farm denied Jayne liability coverage for the fatal automobile collision. The trial court, in considering the motions for summary judgment, agreed with State Farm that under the evidence Jayne's automobile liability policy was cancelled on May 14, 1979, and that the only liability coverage afforded Jayne on the date of the collision was under the motorcycle policy. Since it was undisputed that Jayne was operating an automobile and not a motorcycle at the time of the collision, the trial court found there to be no genuine issue of material fact remaining with regard to the third-party action. Accordingly, it was on this basis that the trial court granted State Farm's motion and denied Jayne's.

It is clear that Jayne was afforded liability coverage for claims arising from his operation of a motorcycle on and after the telephone

conversation of May 14, 1979. Code Ann. § 56-2420. However, the decisive issue is *not* solely what effect the telephone conversation of that date had on the creation and existence of future motorcycle liability coverage. Rather, the decisive issue is what effect that telephone conversation had on the continued existence of Jayne's then extant *automobile* liability coverage. The issue then, as we perceive it, is whether Jayne also had automobile liability coverage on May 16, 1979, or whether such coverage had been cancelled two days previously. The principle of law applicable where there is existing policy of insurance at the time new insurance is procured by the insured is as follows: "[T]he procurement of new insurance as an intended substitution for an existing policy does not constitute an effective cancellation of the policy unless the terms of the policy specifically provide for cancellation in this manner or the parties have otherwise mutually agreed upon this method of cancellation." *Ector v. American Lib. Ins. Co.,* 138 Ga. App. 519, 521 (226 SE2d 788) (1976). Thus, the application of this principle in the instant case demonstrates that unless it can be said that no genuine issue of material fact remains concerning the cancellation of the existing *automobile* liability coverage, it was error to grant State Farm summary judgment.

With regard to cancellation under "the terms of the policy," Jayne's policy of automobile liability insurance provided, in relevant part: "Cancellation. The named insured may cancel this policy by mailing to the company written notice stating when thereafter such cancellation shall be effective . . ." It is readily apparent that existing automobile policy was not cancelled pursuant to this provision, State Farm contending only that the policy was cancelled *orally* on May 14, 1979. Thus, this cancellation under "the terms of the policy" has no relevancy in determining whether State Farm was erroneously granted summary judgment. It is likewise irrelevant in determining whether Jayne was erroneously denied summary judgment. Simply because cancellation in writing by the insured is the only procedure expressly provided for in the policy itself, it does not necessarily follow from the fact that Jayne did not cancel the existing policy in writing that Jayne was entitled to judgment as a matter of law. The policy provided for a method whereby the insured "may" cancel the policy but did not prescribe that cancellation *must* be effectuated in that manner. Cf. *Bankers Mut. Cas. Co. v. Peoples Bank,* 127 Ga. 326 (56 SE 429) (1906). "The method of cancellation provided for in an insurance policy is not necessarily exclusive so as to preclude an effective cancellation of the policy by mutual agreement without compliance with the procedure so provided. Thus, it is well established that a policy of insurance may be cancelled at any time

before loss, by an agreement between the parties, and that such cancellation may be by the consent of the parties, express or implied from the circumstances, independently of the terms of the policy." 43 AmJur2d, Insurance, § 432. This is the rule in Georgia under the holding in *Ector,* supra, to the effect that a policy may be cancelled according to its express terms *or* by the mutual agreement of the parties. Accordingly, the question of the correctness of the trial court's disposition of both motions revolves around the evidence concerning any mutual agreement to cancel the existing automobile liability coverage and to substitute it with motorcycle liability coverage.

The telephone call of May 14, 1979, is the only purported "meeting of the minds" concerning Jayne's status as State Farm's insured. As discussed above, the evidence concerning the nature and substance of this conversation is not undisputed. While State Farm's agent asserts that Mrs. Jayne specifically requested the *cancellation* of the existing automobile coverage and the consequent substitution therefor of motorcycle coverage, Mrs. Jayne, on the other hand, contends that she only requested that State Farm afford coverage for the motorcycle and did not ask and was not told that the existing automobile coverage would be cancelled and that the coverage extended thereunder would not be afforded under an entirely new policy which would be issued on the motorcycle. Thus, construing the evidence most favorably for Jayne as must be done under the procedural posture of the case, no "notice or a request for cancellation [was] communicated to the insurer. [Cits.]" *Ector,* 138 Ga. App. at 522, supra. Under Jayne's evidence, State Farm misconstrued the conversation and independently elected to cancel the existing automobile policy and its relevant coverage and to substitute the motorcycle policy with its less extensive coverage therefor. If the conversation were as Jayne's evidence indicates that it was, the reasonable insured might well assume that *coverage* on his Cougar would be cancelled and his motorcycle would merely be substituted as the "owned vehicle" under the existing policy, the other *terms,* including coverage for driving non-owned vehicles, would remain the same. We cannot say, as a matter of law, that if the conversation were as Jayne's evidence shows, there was a mutual agreement at that time that the entire automobile liability policy be cancelled and that a new motorcycle policy with new terms and more restrictive coverage would be issued as a substitute. Unless there was such a mutual agreement, there was no cancellation of the existing policy on May 14, 1979 by substitution of the motorcycle policy. " 'Cancellation by substitution of one policy for another may be effected by mutual agreement of the parties . . . However, the mere procurement of

additional insurance without requesting the original insurer to cancel its policy does not terminate the [existing] policy.' [Cit.]" *Ector,* 138 Ga. App. at 521, supra. State Farm has demonstrated no reason why the *automobile* policy would otherwise be cancelled in its entirety prior to the end of its term by operation of law or under the terms of the policy itself simply because Jayne sold the owned vehicle and replaced it by a motorcycle for which insurance coverage was also requested. It follows that the trial court erred in granting summary judgment in favor of State Farm.

It was, however, not error to deny summary judgment for Jayne. Assuming that the conversation of May 14, 1979, were as State Farm's agent averred, there was a *specific* request for cancellation of the existing automobile policy and substitution of the motorcycle policy therefor. If the jury finds that this version of the conversation is in fact the correct one, the only policy in force and effect on May 16, 1979, would be the motorcycle policy, under the terms of which no coverage for the automobile collision would be afforded. " 'An insurance policy is in effect cancelled when another policy is substituted for it . . . *If the substitution is authorized by the insured,* however, it is effective even though the new policy had not been delivered nor the old one surrendered . . .' [Cit.] 'Where the substitute policy is issued by the same insurer, the act of substituting the policy is in effect the manifestation of mutual consent to the termination of the original policy and it is therefore not necessary that the parties comply with any provision applicable to unilateral cancellation.' [Cit.]" (Emphasis supplied.) *Scott Transfer v. Excalibur Ins. Co.,* 149 Ga. App. 46, 48 (253 SE2d 438) (1979). There being genuine issues of material fact concerning the oral agreement reached on May 14, 1979, it follows that summary judgment was properly denied to Jayne.

*Appeal in Case Number 62478 dismissed. Judgment in Case Number 62479 affirmed in part and reversed in part. Deen, P. J., and Banke, J., concur.*

DECIDED JANUARY 11, 1982 —
REHEARING DENIED JANUARY 22, 1982 IN CASE NO. 62479 —

*Christopher L. Grant,* for appellant (case no. 62478).

*W. C. Brooks, David H. Lanner, Richard G. Greer,* for appellee (Case no. 62478).

*David H. Lanner, Douglas F. Aholt,* for appellants (case no. 62479).

*W. C. Brooks, Richard G. Greer, Christopher L. Grant,* for

appellee (case no. 62479).