A09A0156. FERNANDEZ v. WEBSINGULARITY, INC. et al.
(681 SE2d 717)

PHIPPS, Judge.

Waldemar Fernandez sued WebSingularity, Inc.; its chief executive officer, Kenneth Gavranovic; and its chief financial officer, Bryan Adams, to recover the money he paid for shares of the corporation.

---

The trial court granted the defendants' motion, styled as one to dismiss, or in the alternative, for judgment on the pleadings. On appeal, Fernandez contends that the ruling was without support as to each of his claims and that he was not given reasonable opportunity to conduct discovery. For reasons that follow, we affirm in part and reverse in part.

Fernandez alleged the following in his complaint. In June or July 2007, Gavranovic solicited him to invest money in a corporation that Gavranovic was in the process of forming, representing that Fernandez would own one-third of the issued and outstanding stock in exchange for a $319,999.95 payment to the company. After the corporation, which became WebSingularity, was formed, Fernandez received documents and a request for payment. Fernandez wired the discussed amount to WebSingularity's account, but thereafter learned that the money tendered was to purchase only about seven percent of the issued and outstanding stock. Thus, Fernandez revoked his offer to purchase stock and demanded the immediate return of his payment. The defendants refused Fernandez's demands.

Fernandez's complaint set forth the following theories to recover compensatory damages: (1) money had and received; (2) breach of an agreement to rescind; (3) conversion; (4) violation of the Georgia Securities Act of 1973;[1] and (5) fraud and deceit. The complaint also contained claims for punitive damages and litigation expenses.

The defendants denied liability. In their answer, they asserted that the documents referenced in Fernandez's complaint included a subscription agreement and a stockholders' agreement. They attached to their answer two exhibits, which they claimed were copies of such agreements that had been executed by Fernandez. The defendants further claimed that, pursuant to those agreements, Fernandez had contracted to invest the money in the corporation; that the express terms of the subscription agreement provided that Fernandez had agreed to an ownership percentage of only approximately 8.16 percent of the then issued and outstanding shares; that no ground existed for the return of his payment; and that Fernandez was therefore not entitled to any recovery sought. In their motion underlying this appeal, the defendants reiterated these defenses and relied on the purported subscription agreement attached to their answer.

Fernandez voluntarily dismissed his claim of fraud and deceit, but otherwise opposed the motion. In his response thereto, inter alia,

---

[1] OCGA § 10-5-1 et seq. Notably, effective July 1, 2009, this Chapter was revised and became known as the "Georgia Uniform Securities Act of 2008." Ga. L. 2008, p. 381. This opinion, however, refers only to the Georgia Securities Act of 1973.

he pointed out that the exhibits attached to the answer were not authenticated and argued that the defendants were impermissibly relying on them as evidence. And to support allegations of his complaint, Fernandez presented his own affidavit.

The trial court noted in its order that it had considered "the entire record," then summarily granted the defendants' motion. In this appeal, Fernandez challenges the court's ruling on substantive and procedural grounds. WebSingularity, Gavranovic, and Adams are the appellees. Fernandez has shown that the trial court erred in imposing judgment against him on his substantive claims of money had and received and of conversion, as well as his claims for punitive damages and litigation expenses based upon those substantive claims. Therefore, as to these four claims, the judgment is reversed. Regarding Fernandez's claims concerning rescission and the Securities Act, however, the judgment is affirmed because Fernandez has demonstrated no merit in any argument pertaining to them.

1. As an initial matter, we consider the procedural posture of this case. OCGA § 9-11-12 pertinently provides that if, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted or on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56."[2] Because matters outside the pleadings were presented to and considered by the trial court in this case, we will treat the contested order as one granting summary judgment to the defendants.[3] We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party.[4]

2. Fernandez contends that the trial court erred in ruling against him on his claim for money had and received. That claim is comprised of the following elements: "a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused."[5] "[A]n action for money had and received, although legal in form, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity."[6] Such a claim "exists only where

---

[2] OCGA § 9-11-12 (b) (7), (c).

[3] *Thompson v. Avion Systems*, 284 Ga. 15, 16-17 (663 SE2d 236) (2008).

[4] *Latson v. Boaz*, 278 Ga. 113-114 (598 SE2d 485) (2004).

[5] *McGonigal v. McGonigal*, 294 Ga. App. 427, 429 (2) (669 SE2d 446) (2008) (citation omitted).

[6] Id. (citation and punctuation omitted).

there is no actual legal contract governing the issue."[7] The contention here hinges on whether Fernandez entered into a binding contract concerning his payment to the company.

Fernandez maintains that he had no binding contract. In his affidavit, Fernandez recounted that, on July 19, 2007, Gavranovic e-mailed him a proposed, unsigned subscription agreement and a proposed, unsigned shareholder agreement. He identified documents attached to his affidavit as copies of the e-mailed agreements. Fernandez recounted in his affidavit:

> I understood that the agreements reflected our agreement that I purchase 1/3 of the common stock of WebSingularity. Therefore, I printed out, signed and faxed back to Defendant Gavranovic the signature pages of the Subscription Agreement and Shareholder Agreement and simultaneously instructed my bank to wire transfer $319,999.95.

On appeal, Fernandez acknowledges "[his] conduct in signing the Subscription Agreement, sending it to the Appellees, and wiring money" as a "subscription offer" to the corporation. Nevertheless, he maintains that he revoked this offer timely such that no binding contract was created. Fernandez cites the principle that "[a] definite offer and complete acceptance, for consideration, creates a binding contract."[8] And he cites OCGA § 13-3-2, which provides: "The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." In his affidavit, Fernandez averred that after he realized that he would not receive one-third of the common stock, he revoked his offer and demanded back his payment, by way of an e-mail to Gavranovic on August 6. And in his complaint, Fernandez alleged, "At the time [he] communicated his withdrawal of the offer to buy the shares of Defendant Websingularity, Defendant Websingularity had not yet accepted the offer to buy, and no contract had been formed."

The appellees maintain, however, that Fernandez was already bound by the subscription agreement when he attempted to revoke his offer. In their answer, the appellees denied Fernandez's complaint

---

[7] Id. at 428 (2) (citation and punctuation omitted); see generally *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406 (349 SE2d 368) (1986) (in an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment – subject to a weighing of the equities between the parties by the trier of fact).

[8] *DeRossett Enterprises v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 729 (621 SE2d 755) (2005) (punctuation and footnote omitted).

allegation that the company had not yet accepted Fernandez's offer when he communicated a withdrawal of it. And in their motion, they specified July 25, 2007 as the date that WebSingularity accepted Fernandez's offer,[9] thus arguing that any attempt on August 6 by Fernandez to revoke his offer was ineffective as untimely.

To show that the company accepted Fernandez's offer on July 25, the appellees relied on that attachment to their answer, which they claimed was a copy of the subscription agreement. The signature page thereof provided, among other things, a line stating "Accepted by the Company on July 25, 2007 (the 'Effective Date')." This language was typed, except for "July 25," which had been inserted in handwriting across a blank line. Handwritten just above that language appeared Gavranovic's name, accompanied by "Chief Executive Officer" in type.

We find that, given this record, the date upon which the company accepted Fernandez's offer was a genuine issue as to a material fact, requiring evidentiary proof. Although the appellees continue to point to the date handwritten onto the signature page of an exhibit attached to their answer,[10] they failed to authenticate the exhibit.[11] Consequently, the exhibit did not constitute competent evidence on the contested issue of the date that WebSingularity accepted Fernandez's offer.[12] Therefore, the appellees have not demonstrated that they were entitled to summary judgment.[13]

---

[9] The parties agree that, regarding acceptance of an offer, the subscription agreement signed by Fernandez provided:

[Fernandez] agrees that [WebSingularity] shall have 30 days from its receipt of this Agreement to either (a) accept this Agreement in full, (b) accept this Agreement for less than all of the shares subscribed for by [Fernandez], or (c) reject this Agreement. If [WebSingularity] does not accept this Agreement, in full or in part, on or before the expiration of such 30-day period, this Agreement will be deemed to be rejected.

[10] Specifically, the appellees assert that "the pleadings show that the Subscription Agreement was signed and accepted on July 25, 2007"; they cite OCGA § 9-11-10 (c) for the proposition that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"; thus, they argue that they were entitled to judgment on the pleadings. But appellees have disregarded Fernandez's allegation in his complaint that the company had not accepted his offer as of August 6, as well as the rule that on motion for judgment on the pleadings, "all well-pleaded material allegations of the opposing party's pleadings are to be taken as true, and all allegations of the moving party which have been denied are taken as false." *Blier v. Greene*, 263 Ga. App. 35 (587 SE2d 190) (2003) (citation omitted). Contrary to their argument, the appellees were not entitled to judgment on the pleadings. See further Division 1, supra.

[11] See generally *Smith v. Hatgimisios*, 233 Ga. 354 356-358 (211 SE2d 306) (1974). Appellees have misplaced reliance upon *Shreve v. World Championship Wrestling*, 216 Ga. App. 387, 388 (1) (454 SE2d 555) (1995), which did not concern any challenge by the plaintiff as to the authenticity of the relied upon language and was properly ruled upon on motion for judgment on the pleadings.

[12] See *White v. City of Atlanta*, 248 Ga. App. 75, 76, n. 3 (545 SE2d 625) (2001).

[13] See OCGA § 9-11-56 (c) (providing that summary judgment is properly granted where

3. Fernandez contends that the trial court erred in ruling against him on his claim for conversion. "[T]o establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property."[14]

As to this claim, the appellees argued in their motion that Fernandez had no right to the money. This argument hinged also upon the exhibit being accepted as showing that Fernandez's offer was accepted on July 25, 2007, before Fernandez sought to revoke his offer. But as explained in Division 2,[15] the exhibit was not competent evidence thereof; it follows then that the trial court erred in granting the appellees' motion as to Fernandez's claim of conversion.

4. Fernandez contends that the trial court erroneously ruled on his claim for "breach of agreement to rescind."

Fernandez shows that he expressed his dismay to Gavranovic about the interest he would be receiving in WebSingularity. He claims that, thereafter, Gavranovic offered to rescind the subscription agreement by stating in an August 6 e-mail to Fernandez: "b) Accept the deal you agreed on and invested on or not." Fernandez claims further that he accepted Gavranovic's offer when he responded by e-mail that same day: "I take option b, return the money." Fernandez argues that the appellees are thereby obligated to abide by their mutual agreement to rescind the subscription agreement and refund his money.

> Parties may by mutual consent abandon an existing contract between them so as to make it not thereafter binding and the contract may be rescinded by conduct as well as by words. The consideration for the oral agreement to rescind is provided by each party's discharge of the duties of the other.[16]

But the record does not show that Gavranovic consented to abandoning the subscription agreement. Nowhere in that e-mail did Gavranovic expressly agree to rescind the contract or to otherwise return Fernandez's payment. Placed within the context of Gavra-

---

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

[14] *Metzger v. Americredit Financial Svcs.*, 273 Ga. App. 453, 454 (615 SE2d 120) (2005) (citation and punctuation omitted).

[15] *Supra.*

[16] *WorksiteRx, LLC v. DrTango, Inc.*, 286 Ga. App. 284, 285 (648 SE2d 775) (2007) (citations and punctuation omitted).

novic's entire e-mail, the cited statement is no evidence that Gavranovic so agreed. Furthermore, Gavranovic responded by e-mail within hours of Fernandez's demand to return the money, and nothing in that response can be construed as showing that he had agreed to rescind the subscription agreement. Rather, Gavranovic's response pertained to how Fernandez could proceed with selling his shares he apparently no longer wanted. Because there was no evidence of mutual consent as Fernandez has claimed, the trial court did not err in determining that Fernandez was not entitled to any recovery under his theory of rescission.

5. Fernandez contends that the trial court erred in ruling against him on his claim for a violation of the Georgia Securities Act, specifically citing OCGA § 10-5-12 (a) (2):

> It shall be unlawful for any person . . . [i]n connection with an offer to sell, sale, offer to purchase, or purchase of any security, directly or indirectly: (A) To employ a device, scheme, or artifice to defraud; (B) To make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (C) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person.

Fernandez averred in his affidavit that, in executing the subscription agreement, he relied upon Gavranovic's prior representation to him that he would be purchasing one-third of the common stock.

But the appellees counter that the subscription agreement that Fernandez admittedly signed showed that Fernandez did not invest the money for such an interest in WebSingularity. They maintain that the agreement on its face showed that Fernandez was investing at most 8.16 percent of the then issued and outstanding shares of common stock of the company.

Fernandez does not dispute the appellees' claim of what the express terms of the subscription agreement provided. He argues instead that his claim survives in light of *Meason v. Gilbert*.[17] In that case, the plaintiff complained that he had been induced to purchase securities because of certain oral fraudulent misrepresentations by the defendants' agent and that the defendants knew or acquiesced in the misrepresentations.[18] The defendants were granted summary judgment on the plaintiff's claim under the Georgia Securities Act,

---

[17] 236 Ga. 862 (226 SE2d 49) (1976).
[18] Id. at 863.

having cited an integration clause in the stock purchase agreement providing that no representations other than those contained in the prospectus had induced the purchaser to buy the securities.[19] The Supreme Court of Georgia, however, ruled in favor of the plaintiff, reasoning, "To allow a purchaser to waive by contract at the time of purchase all violations of the Securities Act would eviscerate the very protections afforded by the statute and such a purported waiver would be void and of no effect."[20]

Fernandez's reliance upon *Meason* is misplaced because that case concerned an earlier version of the Georgia Securities Act. In deciding that case in 1976, the Court expressly noted that the Georgia Securities Act had been amended in 1973, that the circumstances governing that suit had arisen before the effective date of that amendment, and that therefore the Court was applying the prior law.[21] Accordingly, the statute applied in *Meason* made it unlawful

> for any person, in connection (with the sale or purchase of securities) . . . either directly or indirectly: (1) to employ any device, scheme or artifice to defraud, or (2) to engage in any act, practice, transaction or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller.[22]

Pertinently, the 1973 amendment not applied in *Meason* made it unlawful for any person

> to offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (*the buyer not knowing of the untruth or omission*) if such person shall not sustain the burden of proof that he did not know, *and in the exercise of reasonable care could not have known, of the untruth or omission.*[23]

---

[19] Id. at 862.

[20] Id. at 863 (footnote omitted).

[21] Id. at 863, n. 1.

[22] Id. at 864, citing former Code Ann. § 97-112 (b) (Ga. L. 1957, pp. 134, 159) (punctuation omitted).

[23] Ga. L. 1973, pp. 1202, 1248 (emphasis supplied).

Indeed, in referencing this amendment, the *Meason* Court expressly limited its holding: "We express no opinion about whether the result would be the same in the case of a knowing relinquishment of rights."[24]

In the version of the Georgia Securities Act applicable to this case, OCGA § 10-5-14 (a) provides for civil liability for violations of OCGA § 10-5-12 (a). But OCGA § 10-5-14 (a) expressly limits the circumstances where suit may be brought for violating OCGA § 10-5-12 (a) (2), the provision relied upon by Fernandez. A person who violates such provision "is not liable under [OCGA § 10-5-14 (a)] if . . . [t]he purchaser knew of the untrue statement of a material fact or omission of a statement of a material fact."[25]

It is undisputed that the subscription agreement that Fernandez admittedly received and executed did not provide for the interest he claims he was orally promised by Gavranovic. Fernandez does not assert that he was somehow prevented from reading the subscription agreement, and he does not complain that the language therein was in any way ambiguous. Under these circumstances, we conclude that Fernandez knew that the subscription agreement did not provide for a purchase of one-third of the common stock of WebSingularity.[26] Given that the subscription agreement so starkly contradicted Gavranovic's alleged promise, Fernandez knew, for purposes of OCGA § 10-5-14 (a), that the latter was untrue. Consequently, Fernandez is not entitled to recover for the alleged violation of OCGA § 10-5-12 (a) (2). Nothing in *Meason* provides for a different result. The trial court did not err in granting summary judgment to the appellees on this claim.

6. Fernandez contends that the trial court erred by ruling on the appellees' motion, complaining that he had not been given a reasonable opportunity to conduct discovery. He asserts that, because the appellees' motion should have been treated as one for summary judgment,[27] he was entitled to "be given reasonable opportunity to present all material made pertinent to such a motion by Code Section 9-11-56."[28]

"If [Fernandez] needed additional discovery so as to make a response to appellee's motion, [he] should have invoked OCGA §

---

[24] *Meason*, supra at 863, n. 2.

[25] OCGA § 10-5-14 (a) (1).

[26] *McCullough v. Kirby*, 204 Ga. 738, 744 (5) (51 SE2d 812) (1949) (a party to a contract who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as prevents him from reading).

[27] See generally Division 1, supra.

[28] OCGA § 9-11-12 (b) (7), (c).

9-11-56 (f),"[29] which provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.

Fernandez has failed to show, however, that he presented the trial court any such affidavit.

Furthermore, the record shows that the appellees' motion was filed and served on May 30, 2008. The record further shows that on July 8, 2008, Fernandez filed a "consent extension of time to file response to defendants' motion to dismiss, or in the alternative motion for judgment on the pleadings," seeking an extension "through and including July 16, 2008." Fernandez filed a response on July 16, and there was no request made for oral argument. The trial court did not rule on the motion until July 22, 2008. No trial court error has been demonstrated.[30]

7. Fernandez contends that the trial court erred by ruling against him on his claims for punitive damages and litigation expenses.[31] In their motion, the appellees argued that because Fernandez's other claims failed, his claim for punitive damages and litigation expenses failed as a matter of law. But in light of Divisions 2 and 3,[32] the appellees have not demonstrated that they were entitled to judgment as a matter of law on Fernandez's claims for punitive damages and litigation expenses.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 13, 2009.

*Friedman, Dever & Merlin, Genevieve H. Dame*, for appellant.

---

[29] *Thompson v. Tom Harvey Ford Mercury*, 193 Ga. App. 64 (387 SE2d 28) (1989).

[30] See *Smyrna Dev. Co. v. Whitener L.P.*, 280 Ga. App. 788, 790-791 (3) (635 SE2d 173) (2006).

[31] See OCGA §§ 13-6-11 (regarding availability of litigation expenses); 51-12-5.1 (regarding availability of punitive damages); see generally *Tyler v. Lincoln*, 272 Ga. 118, 120-122 (1), (2) (527 SE2d 180) (2000).

[32] Supra.

*Arnall, Golden & Gregory, Roger A. Chalmers*, for appellees.