**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 15, 2022**

# In the Court of Appeals of Georgia

A22A1668. MAG MUTUAL INSURANCE COMPANY v. MILES et al.

PHIPPS, Senior Appellate Judge.

Martha Miles, individually, as the surviving spouse of Bryan Miles, and as the executor of Bryan's estate (collectively, "Miles"), obtained a $3 million judgment against South Georgia Oncology Hematology Center, P.C. ("SGO"). Miles then sued MAG Mutual Insurance Company, seeking to recover the proceeds of SGO's insurance policy with MAG. MAG now appeals from the denial of its motion for summary judgment, following our grant of its application for interlocutory review. See *MAG Mut. Ins. Co. v. Miles*, Case No. A22I0145 (Mar. 28, 2022). Among other arguments, MAG contends that the undisputed facts show that SGO cancelled its

policy before Miles asserted her claims against SGO. For the reasons that follow, we agree and reverse.

Viewed in the light most favorable to Miles, the nonmovant, see *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022), the record shows that MAG issued a professional liability insurance policy (the "Policy") to SGO in June 2013. The Policy identified Barjinder Singh, M.D., and Sridhar Srinivasan, M.D., as the only two "[p]rotected" providers and initially was to be effective from July 10, 2013, to July 10, 2014. By its terms, as a "claims-made" policy, the Policy provided coverage only for claims made while it was in effect. See *Brown v. Hitch*, 208 Ga. App. 784, 785 (431 SE2d 751) (1993) (a claims-made policy covers claims that accrue and are reported to the insurer during the effective dates of the policy); accord *Serrmi Products v. Ins. Co. of Pennsylvania*, 201 Ga. App. 414, 414 (411 SE2d 305) (1991). In December 2013, MAG issued a "Policy Cancellation" cancelling the Policy effective December 1, 2013.

In February 2014, Bryan and Martha Miles sued Dr. Singh, SGO, and numerous other defendants for medical malpractice and related claims arising out of the alleged misdiagnosis of a tumor in Bryan's brain and his ensuing medical treatment (the "Underlying Action"). After Bryan died, his wife, as his surviving

2

spouse and executor of his estate, filed an amended complaint that added a wrongful death claim. In May 2018, the trial court in the Underlying Action entered a default judgment against SGO and awarded Miles $3 million in damages. In January 2019, Miles tendered the judgment to MAG for satisfaction under the Policy. The record contains no indication that MAG responded to Miles's demand.

In March 2019, Miles brought this action against MAG for breach of contract, seeking to recover the $3 million judgment against SGO. MAG thereafter filed a motion for judgment on the pleadings and summary judgment, arguing, in relevant part, that: (i) Miles's claims against SGO were not asserted during the Policy period, as required for coverage under the claims-made policy at issue here; and (ii) neither SGO, nor anyone acting on its behalf, provided MAG with actual notice of the claims, as also required by the Policy. The trial court denied MAG's motion on grounds that, as relevant here, disputed factual issues remain as to: (i) whether the Policy was effectively cancelled in December 2013, before Miles initially asserted her claims against SGO in February 2014; and (ii) whether MAG received sufficient notice of

3

Miles's claims against SGO to satisfy the Policy notice requirements.[1] This interlocutory appeal followed.

Because resolution of the issues raised in this appeal implicates matters outside of the pleadings, we assume, without deciding, that MAG's motion for judgment on the pleadings was properly denied and address only whether MAG was entitled to summary judgment. See OCGA § 9-11-12 (c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."). "We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry*, 362 Ga. App. at 460.

> Summary judgment is proper when there is no genuine issue of material
> fact and the movant is entitled to judgment as a matter of law. The
> burden on the moving party may be discharged by pointing out by
> reference to the affidavits, depositions and other documents in the

---

[1] Although the trial court's order arguably reads as if it conclusively adjudicated these claims adversely to MAG, we construe the order as finding only that disputed questions of fact remain on these issues, given the procedural posture of the case — i.e., the denial of a motion for judgment on the pleadings and summary judgment filed by only one party. See generally OCGA §§ 9-11-12 (c); 9-11-56 (c), (e); *Henry*, 362 Ga. App. at 460-461.

4

record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

Id. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e).

1. MAG first contends that the undisputed facts show that the Policy was cancelled in December 2013, thereby precluding coverage for Miles's claims, which were asserted for the first time in February 2014. We agree.

"The burden of proving a cancellation of a policy of insurance is upon the party asserting such cancellation." *Ector v. American Liberty Ins. Co.*, 138 Ga. App. 519, 521 (2) (226 SE2d 788) (1976) (citation and punctuation omitted). "The method of cancellation provided for in an insurance policy is not necessarily exclusive so as to preclude an effective cancellation of the policy by mutual agreement without compliance with the procedure so provided." *Davidson v. State Farm Mut. Automobile Ins. Co.*, 161 Ga. App. 21, 24 (2) (288 SE2d 832) (1982) (citation and punctuation omitted). Thus, a policy "may be cancelled at any time before loss, by an agreement between the parties, and . . . such cancellation may be by the consent of the parties, express or implied from the circumstances, independently of the terms of the policy." Id. at 24-25 (2) (citation and punctuation omitted); accord *Fernandez v.*

5

*WebSingularity, Inc.*, 299 Ga. App. 11, 16 (4) (681 SE2d 717) (2009) ("Parties may by mutual consent abandon an existing contract between them so as to make it not thereafter binding[,] and the contract may be rescinded by conduct as well as by words.") (citation and punctuation omitted); *Nationwide Mut. Ins. Co. v. McCollum*, 179 Ga. App. 500, 502 (1) (347 SE2d 231) (1986) (same); *Ector*, 138 Ga. App. at 521 (1) (the parties to an insurance policy may mutually agree to cancel it in a manner not explicitly provided for in the policy). "The consideration for the oral agreement to rescind is provided by each party's discharge of the duties of the other." *Fernandez*, 299 Ga. App. at 16 (4) (citation and punctuation omitted); accord *WorksiteRx, LLC v. DrTango, Inc.*, 286 Ga. App. 284, 285 (648 SE2d 775) (2007).

Here, the Policy contained the following cancellation provisions:

You can cancel this policy in whole or in part at any time. We can also cancel this policy, but our right to cancel has some restrictions which are described below.[2]

**How you can cancel.** To cancel this policy or any part of it, you must deliver the policy, or the part you want canceled to us or any of our authorized agents. If this isn't possible, notify us in writing and include the future date you want coverage to end. Upon our receipt of written

_____

[2] It is undisputed that, in the Policy, "You" refers to the insureds, while "We" refers to MAG.

6

notice of cancellation, we may waive the future date requirement by confirming the date and time of cancellation in writing to the person named in the "Policy Issued to" section of the Declarations Page. You'll get a refund for the unused premium, calculated according to short-rate tables or formulas in our rating plan filed with the Commissioner of Insurance.

**How we can cancel if you don't pay your premium.** If you fail to pay any premium when due, we can cancel your policy. If we cancel for this reason, we'll mail or deliver a written cancellation notice to you at least 10 days before your coverage will end.

**How we can cancel for other reasons.** We can also cancel this policy for any reason other than nonpayment of premium. If we do, we'll mail a written cancellation notice to you.

If your policy has been in effect less than 60 days, we'll mail this notice at least 10 days before your coverage will end.

If your policy is a renewal or has been in effect 60 days or more, we'll mail this notice at least 45 days before your coverage will end.

The record shows that, on November 26, 2013, SGO's office manager informed a MAG account manager via e-mail that SGO would be closing its practice on November 29, 2013. The e-mail sought information regarding "malpractice 'tail'

7

coverage"[3] for Dr. Srinivasan, stated that Dr. Singh would no longer require coverage because he was leaving the country, and provided Dr. Srinivasan's contact information, if further details were required. On December 5, 2013, Natasha Davis, a MAG account service consultant, sent an e-mail to Dr. Srinivasan stating:

Here is what we need to cancel the policy:

1. Written cancellation (email is fine) from you and Dr. Singh requesting us to cancel the policy effective your last day the practice was in operation. If your coverage with [your new practice] is effective 12/1/13[, w]e will need to cancel the policy effective 12/1 to avoid any gaps in coverage.

2. Forwarding addresses for Dr. Singh and yourself that we may send you tail information.[4]

Two days later, Dr. Srinivasan responded, in relevant part:

You can please consider this email as a confirmation for canceling my policy effective 12/1/13.

---

[3] "Tail coverage, also known as an extended-reporting endorsement, provides coverage for a physician for claims made after his employment has ended." *Antonios v. Gwinnett Clinic*, 294 Ga. App. 101, 102, n. 1 (668 SE2d 531) (2008); accord *Brown*, 208 Ga. App. at 785.

[4] See note 3, above. Tail coverage is not at issue in this appeal.

8

I'll check with Dr. Singh and will let you know. He is in India and is not planning to come back to the US in near future.

Four days later, Davis sent an e-mail to other MAG personnel highlighting "Dr. Srinivasan's request . . . to cancel policy effective [12]/1/13"[5] and further stating, "Dr. Singh will need to be cancelled effective 12/1 as well. He is out of the country so I doubt we will get a written request from him." On December 19, 2013, MAG issued a "Policy Cancellation" indicating that the SGO Policy had been cancelled effective December 1, 2013, "due to the insured's request."

(a) The trial court concluded that disputed issues of fact remain as to whether the Policy was cancelled in December 2013 for several reasons. We address each in turn.

(i) The trial court first found that, under the terms of the Policy, MAG was authorized to cancel the Policy only if SGO delivered the Policy to an authorized agent of MAG, or doing so was not possible, and that neither such condition was satisfied here. As discussed above, however, the parties to an insurance policy may cancel it by mutual agreement without complying with the policy's express terms. See

---

[5] In what appears to be an isolated clerical error, Davis's e-mail mistakenly identified the cancellation date for Dr. Srinivasan as "13/1/13."

*Davidson*, 161 Ga. App. at 24-25 (2); *Ector*, 138 Ga. App. at 521 (1); see also *Fernandez*, 299 Ga. App. at 16 (4). Consequently, MAG's failure to require strict compliance with the Policy's cancellation provisions is immaterial if SGO and MAG mutually agreed to cancel it by other means, and the trial court therefore erred by concluding that cancellation could be effected only in accordance with the written Policy provisions.

(ii) The trial court further concluded that Davis was not an "authorized representative" with the power to "make material changes" to the Policy. As stated above, however, MAG, not Davis, cancelled the Policy.[6]

(iii) The trial court alternatively found that any purported cancellation was ineffective because neither SGO nor Dr. Singh provided MAG with an e-mail requesting cancellation directly from Dr. Singh, as requested by Davis. Even assuming that the requested e-mail initially became a condition precedent to cancellation, however, SGO and MAG nevertheless remained free to mutually agree

---

[6] For this reason, Miles's assertions that Davis had no authority "to enter a 'mutual agreement' on behalf of the insurer" and "was not authorized to bind" MAG are misplaced.

10

to cancel the Policy by other means, as they did here.[7] See Division 1 (a) (v), below; see also generally *Fernandez*, 299 Ga. App. at 16 (4); *Davidson*, 161 Ga. App. at 24-25 (2); *Ector*, 138 Ga. App. at 521 (1).

(iv) In another alternative ruling, the trial court determined that the cancellation was ineffective because it "was not countersigned by an actual 'Authorized Representative' for MAG." In that regard, the court relied on a Policy provision stating, "This policy can only be changed by a written endorsement which is made a part of the policy. The endorsement must be countersigned by one of [MAG's] Authorized Representatives." By its terms, however, the Policy distinguishes between changes to the Policy and cancellation. And the Policy did not require a cancellation to be countersigned by an authorized representative of MAG. Even if it did, SGO and MAG nevertheless remained free to mutually agree to cancel the Policy by other means, which they did under the circumstances presented here. See Division 1 (a) (v), below; see also generally *Fernandez*, 299 Ga. App. at 16 (4); *Davidson*, 161 Ga. App. at 24-25 (2); *Ector*, 138 Ga. App. at 521 (1).

---

[7] Miles's reliance on our decision in *Atlantic American Life Ins. Co. v. Huddle House*, 143 Ga. App. 52 (237 SE2d 520) (1977), also is misplaced. Our decision in that case contains no indication that the insurer affirmatively issued a policy cancellation, as MAG did here. See generally id. at 52-54.

11

(v) The trial court further concluded that "no one other than Dr. Singh could terminate his vested interest" in SGO's Policy. That determination rests on two propositions. First, the Policy provides that each individual listed under "[w]ho's protected" becomes a member of MAG entitled to cast one vote each at MAG member meetings. Second, it appears to be undisputed that Dr. Singh was SGO's only corporate officer. As discussed above, however, Dr. Srinivasan also was identified as a "protected" person under the Policy, so no distinction exits between Drs. Singh and Srinivasan with respect to membership in MAG, pretermitting whether such membership is relevant to a mutual agreement to cancel.

Moreover, the pertinent question in this action is not whether Dr. Singh had a "vested interest" in the Policy, as Miles seeks to recover insurance proceeds only as to her judgment against SGO, and not as to a judgment against Dr. Singh. The pertinent question instead is whether the record as a whole — including Dr. Srinivasan's correspondence with MAG on behalf of SGO — shows without dispute the existence of an agreement between SGO and MAG to cancel the Policy in December 2013. And in that regard, Miles notably has identified no evidence that Dr. Singh ever disputed the cancellation of the Policy by mutual agreement.

12

As noted above, SGO's office manager informed MAG in a November 26, 2013 e-mail that the practice was closing, that Dr. Srinivasan may want tail coverage (which, it appears, he ultimately did not need), and that Dr. Singh would no longer need coverage. And Natasha Davis testified in a deposition that she construed that e-mail as requesting cancellation of the Policy. She further testified that, while MAG's preference would have been to obtain written requests for cancellation from both Drs. Singh and Srinivasan, a request from one of the "representatives of the policy" — including Dr. Srinivasan — was sufficient for MAG to cancel the Policy. Davis explained that written requests from both doctors (the only two covered under the Policy) were unnecessary here in light of Dr. Srinivasan's representations that the practice was closing and that Dr. Singh was moving out of the country. To that end, Dr. Srinivasan's subsequent e-mail confirming cancellation requested cancellation of "the policy" and not just coverage for one of the doctors.

Importantly, Davis further testified that, if SGO had prepaid any Policy premiums for coverage beyond the cancellation date, it would have received a refund of any unused premium following a mid-term cancellation. And MAG's director of regional small business and agency relations similarly attested in an affidavit that: (i) the Policy was cancelled effective December 1, 2013, "[a]t SGO's request"; and

13

(ii) MAG "received no further premium payments related to the Policy following the date of termination, and retained no premium payments related to coverage for periods following the effective date of cancellation."[8]

Moreover, when an attorney representing Dr. Singh in the Underlying Action contacted MAG in 2015 to determine whether the Policy provided coverage for the claims raised in the Underlying Action, MAG informed the attorney that no coverage existed because the Policy had been cancelled. The parties have pointed to no record evidence suggesting that either Dr. Singh, his attorney, or SGO ever disputed MAG's position in that regard.

Finally, as discussed above, Drs. Singh and Srinivasan were the only two individuals covered by the Policy, and, by late November 2013, Dr. Singh had left the country with no plans to return in the near future. Consequently, viewed in its entirety, the record evidence would authorize a jury to reach only one reasonable conclusion: that both SGO and MAG mutually agreed to cancel the Policy in December 2013 by their words and conduct. See *Fernandez*, 299 Ga. App. at 16 (4); *Davidson*, 161 Ga. App. at 24-25 (2); *Ector*, 138 Ga. App. at 521 (1). It therefore was

[8] The parties have identified no record evidence establishing whether SGO was due (or paid) a refund under the circumstances presented here.

14

incumbent on Miles to come forward with "specific evidence giving rise to a triable issue" and calling into question that conclusion, which she has failed to do. *Henry*, 362 Ga. App. at 461 (citation and punctuation omitted); see OCGA § 9-11-56 (e). And given no affirmative record evidence supporting a different conclusion, the mere absence in the current record of a request to cancel explicitly originating directly from Dr. Singh is insufficient, on the specific facts of this case, to give rise to disputed issues of fact in that regard. See generally *Handberry v. Manning Forestry Svcs.*, 353 Ga. App. 150, 152 (836 SE2d 545) (2019) (speculation raising only conjecture or possibility is insufficient to create an inference of fact on summary judgment).

(vi) In its final conclusion on this issue, the trial court asserted that "MAG is not authorized to perpetually modify its policy terms to avoid its obligation to satisfy a judgment" because, "[i]f that were so, a truly inequitable scenario would ensue whereby the insurer could avert virtually any pay-out." Nothing in the current record, however, implicates "perpetual[] modifi[cation]" of the terms of an insurance policy. Moreover, as discussed above, SGO and MAG were free to mutually agree to cancel the Policy before its termination date without complying with any Policy cancellation requirements, notwithstanding the trial court's predictions about other insurers potentially avoiding pay-outs under other, as-yet unknown factual scenarios. See

15

*Fernandez*, 299 Ga. App. at 16 (4); *Davidson*, 161 Ga. App. at 24-25 (2); *Ector*, 138 Ga. App. at 521 (1). The trial court's statements in this regard thus have no bearing on this appeal.

(b) Miles contends that MAG had no authority to waive strict compliance with the Policy's cancellation requirements because, according to Miles, doing so will injure SGO (by depriving it of insurance coverage to pay the judgment against it) and negatively affect the public interest (by depriving Miles of insurance coverage to pay the judgment in her favor). See generally *2010-1 SFG Venture v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 897 (1) (a) (775 SE2d 243) (2015) ("A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest.") (citation and punctuation omitted). On the facts of this case, this flawed argument assumes what it seeks to establish. Followed to its logical conclusion, Miles's position would eviscerate the rule permitting parties to mutually agree to terminate an insurance policy before its term has ended by allowing either a judgment creditor or the insured to revive a cancelled policy where a post-cancellation claim is asserted against the insured. In that vein, none of the decisions indirectly relied on by Miles (via references to MAG's appellate brief) in support of her waiver claim address mutual termination of

16

an insurance policy. See *Yash Solutions v. New York Global Consultants Corp.*, 352 Ga. App. 127, 132-136 (1) (a) (834 SE2d 126) (2019) (addressing a claim that the defendant in a commercial dispute waived enforcement of a non-compete provision); *2010-1 SFG Venture*, 332 Ga. App. at 894, 897-902 (1) (addressing the enforceability of a limitation of liability clause in a commercial real estate lender participation agreement); *AAF-McQuay v. Willis*, 308 Ga. App. 203, 217-218 (4) & (4) (a) (707 SE2d 508) (2011) (addressing the defendant's affirmative defense of waiver to the plaintiff's claim that the defendant breached a partnership agreement by making an unauthorized transfer of ownership interests in the partnership); *Mauldin v. Weinstock*, 201 Ga. App. 514, 519-520 (4) (411 SE2d 370) (1991) (concluding that the plaintiff in a legal malpractice case waived his right to pursue the legal action underlying his malpractice claim). Finally, Miles's suggestion that an anti-waiver provision in the Policy barred the parties from mutually agreeing to cancel the Policy similarly is misplaced because, "under Georgia law, a no-waiver or anti-waiver provision in a contract may itself be waived." *Yash Solutions*, 352 Ga. App. at 136 (1) (a).

Aside from the issues addressed above, Miles has identified no other record evidence that would authorize a jury to conclude that either SGO or MAG did not

17

mutually agree to cancel the Policy in December 2013. Consequently, for each of the above reasons, we reverse the trial court's ruling that disputed issues of material fact remain with respect to whether the Policy was cancelled in December 2013, before Miles initiated the current lawsuit in 2014. And because the Policy was not in effect when the current lawsuit began, MAG is entitled to summary judgment.

2. Our ruling in Division 1 renders it unnecessary to address the trial court's conclusion that disputed issues of material fact remain as to whether MAG was provided with sufficient notice of the Underlying Lawsuit, and we therefore express no opinion on that ruling.

*Judgment reversed. Doyle, P. J., and Reese, J., concur.*